## ELDRIDGE et al. v. POIRIER et al.
### No. 10916.

Court of Civil Appeals of Texas. Dallas.
April 23, 1932.

Rehearing Denied May 28, 1932.

Muse & Muse, of Dallas, for appellants.

W. H. Flippen, Jno. T. Gano, and J. T. Suggs, Jr., all of Dallas, and Hamp P. Abney, Jr., of Houston, for appellees.

LOONEY, J.

Under a builder's contract between M. M. Mayfield, contractor, and J. R. Eldridge and wife, Laura T. Eldridge, owners, entered into on December 27, 1919, Mayfield agreed to furnish the labor and material and to erect for the Eldridges, on a certain lot located in Munger place, city of Dallas, a two-story brick veneer residence, outhouses, etc., according to plans and specifications, the Eldridges' agreeing to pay therefor $12,500 to be evidenced by their note payable to Mayfield due in 120 days. J. H. Knott was engaged by Mayfield, as subcontractor, to build the house. Supplementing the arrangement with Mayfield, Knott and J. R. Eldridge entered into a written contract on March 3, 1920, whereby Knott agreed to do precisely the same work provided in the contract between the Eldridges and Mayfield, but included additions that increased the consideration from $12,-500 to $15,980. In this situation, Knott proceeded with the work of construction under both contracts, that is, as subcontractor under Mayfield under the mechanic's lien contract of December 27, 1919, and under the contract of March 3, 1920, which included additions amounting to $3,480. In the course of the construction, A. J. Poirier, a materialman,

sold and furnished to Knott certain millwork and materials that were wrought into the structure, and when Knott abandoned the work, in September, 1920, Poirier held an unpaid claim against him amounting to $1,010.-40; and, after serving written notice thereof on Eldridge (September 14, 1920), Poirier, on September 15, 1920, filed and recorded his affidavit, as provided by the statute, in an effort to fix Eldridge's liability and a lien upon his lot and improvements.

Poirier brought this suit against Knott, Eldridge, and wife (and others whose connection with the litigation is not now of importance) to recover balance due him as above stated, and also sought foreclosure of his alleged statutory lien upon the lot and improvements. Knott answered the suit, and filed a cross-bill against the Eldridges seeking to recover an unpaid balance due him on the contract with foreclosure of an alleged statutory lien upon the premises. The defenses urged by Eldridge and wife to both the suit of Poirier and the cross-action of Knott will become apparent in the course of the discussion.

Based on the findings of the jury, the court rendered judgment in favor of both Poirier and Knott against Eldridge for debt, and foreclosed a statutory lien on the premises in favor of Poirier, but denied foreclosure in favor of Knott; Eldridge and wife appealed.

Among other issues framed by the pleadings were whether the lot in Munger addition, upon which the improvements were erected, was the homestead of the Eldridges on December 27, 1919, when the contract was executed between them and Mayfield for the erection of the dwelling, and whether at the time of the designation of said lot as a homestead its value exceeded $5,000.

In response to issues, the jury found that it was not the intention of Eldridge, at the time he contracted to purchase the lot (September 25, 1919), to construct improvements thereon and use the same as a homestead for himself, wife, and minor children, and that at the time the lot was purchased it was worth, unimproved, the sum of $5,600.

Appellants challenge the correctness of these findings on the ground that they are, not only not supported by evidence, but are altogether opposed to uncontradicted evidence.

These contentions must be sustained. The evidence is undisputed that, at the time Eldridge contracted for the lot, he was without a home and intended to improve the lot and use it as a homestead for himself, wife, and two minor children; furthermore, the record fails to disclose any evidence that warranted the jury in finding that the lot, at the time of its acquisition by Eldridge, was of a greater value than $4,800. These facts were

so indisputably established by uncontradicted evidence that no jury question arose.

Aside from these facts, however, the evidence showed that immediately after the lot was purchased Eldridge constructed a two-story garage on the rear of the lot, and about December 1, 1919, moved into and occupied the same with his family, and was thus residing upon the lot on December 27, 1919, when the Mayfield contract was executed; that he and family continued to reside in the garage building until September, 1920, at which time they moved into and occupied the uncompleted residence, and thereafter used and occupied the premises for homestead purposes until the property was sold several years later.

In view of these undisputed facts, we hold that the homestead questions involved did not present jury issues. See American Exchange National Bank v. Jeffries (Tex. Civ. App.) 36 S.W.(2d) 558, and authorities cited.

■ Appellants say that the Mayfield contract did not create a statutory lien on their homestead, and therefore was an insufficient basis for the lien claimed by Poirier, because. upon its face and by its terms, the contract was by Eldridge and wife with Eldridge, himself, as contractor, to construct the residence and improvements for $12,500; that the law inhibits the creation of a lien upon a homestead by such a contract, nor was it sufficient to create a lien in favor of Mayfield to secure the payment of money furnished by him to J. R. Eldridge to pay for labor and material with which to construct the improvements.

This contention is based, we believe, on an erroneous construction of the Mayfield-Eldridge contract. We think it was the evident intention of the parties, Eldridge and wife, as owners, and M. M. Mayfield, as contractor, to provide for the erection of a residence according to certain plans and specifications, Mayfield to furnish all labor and material necessary, and Eldridges, the owners, to pay for same the sum of $12,500 to be evidenced by their promissory note payable to Mayfield secured by an express mechanic's, contractor's and materialman's lien on the homestead lot. Obviously, if this was the intention of the parties, all palpable errors resulting from the misuse or confusion of names should be corrected by construction. We quote from the instrument to show the application of this rule; the instrument reads:

"Know all men by these presents: That we, J. R. Eldridge and wife, Laura T. Eldridge, of Dallas County, Texas, parties of the first part and owners, for and in consideration of the mutual covenants, agreements, stipulations and promises hereinafter set forth have this day contracted, covenanted and agreed and by these presents do hereby contract, covenant and agree with M. M. Mayfield of Dallas County, Texas, party of the second part and contractor, as follows, towit: The said party of the second part agrees and binds himself to furnish certain labor and material as agreed upon by him and the said J. R. Eldridge for the construction by the said *Eldridge* in a workmanlike manner, within one hundred and twenty (120) working days from the date hereof, a two-story brick veneer residence with nine room, etc. * * * according to the plans and specifications thereof agreed upon by the parties hereto. Said improvements are to be erected upon the following described land belonging to the parties of the first part situated in the city and county of Dallas, etc. (Here follows definite description of the lot in question). * * * Said improvements are to be constructed by said *Eldridge* within the time hereinabove specified free and clear of all liens, claims and incumbrances whatsoever except as herein provided.

"In consideration of the premises and the said contract and agreement of said contractor to furnish said labor and material as aforesaid, the parties of the first part, owners of said land above described, hereby agree and bind themselves, their heirs, executors, administrators and assigns to pay the said party of the second part the sum of $12,-500.00 as follows: (Here follows description of the note for $12,500.00 payable to the order of Mayfield, due 120 days from date bearing eight per cent interest) and the said parties of the first part, for and in consideration of the premises hereby grant and acknowledge to the said party of the second part, his successors and assigns an express mechanic's, contractor's and materialman's lien on said land above described and all improvements made thereon under and by reason of this contract, to secure the payment of said note and interest thereon according to the face, tenor and effect thereof. * * * It is agreed by all the parties hereto, that should the said *Eldridge* abandon for a period of ten (10) days the construction of said improvements or shall fail for any reason to complete said improvements, then the owner of the aforesaid note, either personally or by agent, is hereby given the right to take possession of said premises and complete the improvements contemplated by this contract, and in such event the aforesaid lien shall inure to the benefit of the owner of said note in the same manner and to the same extent as though this contract had been completely performed by all parties hereto." The owners agreed to keep the improvements insured against loss by fire, loss payable to the holder of the note, and concluded with the following language: "This contract is executed and delivered by the parties of the first part, prior to the furnishing of any material or performance of any labor in connection with the construction of said improvements."

■ We think it is obvious that the name of Eldridge was erroneously written for that of Mayfield at the three places in the contract, indicated by italics. The doctrine is well established that written contracts will be construed according to the intention of the parties, notwithstanding errors and omissions, when, by perusing the entire document, the errors can be corrected and omissions supplied, and, to this end, words, names, and phrases misused may be omitted entirely, and words, names, and phrases obviously intended may be supplied. See 13 C. J. 535, 536 (§ 496) 8, (§ 497) 9; 6 R. C. L. 849, § 238; Stone v. Robinson (Tex. Civ. App.) 180 S. W. 135, 136; Irwin v. Nichols, Dean & Gregg, 87 Ark. 97, 112 S. W. 209. We hold, therefore, that the appearance of the name of Eldridge instead of that of Mayfield at the three places in the contract resulted from errors; that by perusing the entire instrument the errors can, and should be, corrected by construction so as to effectuate the intention of the parties. The contract was, in our opinion, valid and enforceable, and furnished sufficient basis to fix a valid mechanic's, contractor's and materialman's lien on the premises.

■ In his fourth supplemental petition filed May 5, 1930, Poirier answered the attack of appellants on the Mayfield contract, alleging, in substance, that the appearance of the name of Eldridge instead of Mayfield at the three places in the contract was the result of errors in drafting the instrument, that Mayfield and not Eldridge was the contractor, and that it was the purpose of the contract to so provide, wherefore such erroneous recitals should be corrected. Appellants excepted to these allegations (a) because it was not competent, under the rules of pleading, to plead such matters in a supplemental petition, and (b) because the right to reform the contract (a distinct cause of action) was barred by limitation. The court overruled these exceptions, and, in our opinion, committed no error in so doing. Evidence was introduced in response to these allegations and an issue submitted thereon, which was found by the jury favorable to the contention of Poirier. The matter pleaded by Poirier was not a cause of action at all, nor was the purpose of the plea the reformation of the contract, but simply to have the erroneous recitals corrected to conform to the intention of the parties and to obtain the enforcement of the contract as originally pleaded. The Mayfield contract formed the basis of Poirier's cause of action, was pleaded at length in his second amended petition, and a copy thereof was attached as an exhibit, in connection with allegations to the effect that Mayfield was the contractor, etc. The allegations excepted to were made as a reply to the attack on the instrument by appellants, and, in our opinion, were appropriately pleaded in the supplemental petition.

The statutes on pleading contain no reference to the filing of supplemental petitions or answers (see chapter 2, title 42, R. S. 1925, arts. 1997–2020); this subject is regulated exclusively by rules of procedure established by the Supreme Court under authority of section 25, art. 5, of the Constitution. Rule 3 for District and County Courts, in so far as applicable, reads: "The petition of plaintiff shall consist of an original petition and such supplemental petitions as may be necessary in the course of pleading by the parties to the suit to enable the plaintiff to state all of the facts presenting his cause of action, and such other facts as may be required to rebut the facts that may be set up in the original and supplemental answers, as pleaded by the defendant."

It is obvious that the phrase "petition of plaintiff" is used in a plural sense, and comprehends, not only the original petition, but such supplemental petitions as may be necessary to enable the plaintiff to state all facts constituting his cause of action; and, furthermore, to state such other facts as may be necessary to rebut the facts pleaded by the defendant. The latter purpose is also provided for in rule 5 as follows: "The plaintiff's supplemental petitions may contain exceptions, general denials and the allegations of new facts not before alleged by him, in reply to those which have been alleged by the defendant." We are of opinion, therefore, that the court did not err in overruling the exceptions under consideration.

■ Appellants insist, however, that the judgment rendered in favor of Poirier was not authorized by either the law or facts, in that their liability under the Mayfield contract could not exceed the amount named therein, to wit, $12,500, whereas the record discloses that the sum paid by appellants on the contract prior to the receipt of notice from Poirier of his claim exceeded the amount they were obligated to pay under the contract.

This contention is, in our opinion, sustained by the record. The jury found that the first notice Poirier gave Eldridge of his claim against Knott was on September 4, 1920; this finding was evidently based upon evidence of verbal notice, but statutory notice given by Poirier in an effort to fix Eldridge's liability and a lien upon his homestead was not given until September 14, 1920, by letter, in which Poirier notified Eldridge of his claim against Knott, inclosed an itemized statement, and claimed a materialman's and mechanic's lien on the improved lot; and on the next day (September 15, 1920) filed for record, in the office of the county clerk of Dallas county, his affidavit with itemized claim attached, as provided by article 5464. If, prior to this time, the Mayfield contract had become exhausted, Eldridge could neither be held liable personally, nor could his homestead be burdened with a lien for the payment

of Poirier's claim against Knott. The facts with reference to this matter are these: Mayfield paid Knott, on signed orders from Eldridge, between March 13 and August 1, 1920 the sum of $8,267.70, also paid the value of material furnished Knott by Mayfield on the contract up to and including September 8, 1920, the sum of $4,760.80, aggregating $13,-028.38, which exhausted the Mayfield contract (of $12,500) under which Poirier subsequently sought to fix Eldridge's liability and a lien upon his homestead. Poirier seeks to hold Eldridge liable under the statute for the payment of his claim, also to establish a statutory lien upon the Eldridge homestead, and, while such results may be worked out, if timely action is taken, yet, in a situation such as is presented here, the statute, article 5463, expressly provides that "* * * the owners shall in no case be required to pay, nor his property be liable for, any money that he may have paid to the contractor before the fixing of the lien or before he has received written notice of the existence of the debt," and again it is provided in article 5468 that "* * * nothing in this law shall in any manner affect the contract between the owner and original contractor as to the amount, manner or time of payment of said contract price." In view of this situation, we hold that the belated effort of Poirier to fix the statutory liability of Eldridge and a lien upon his homestead was futile.

■ But in addition to the alleged statutory liability of Eldridge to pay the Knott claim, Poirier, in his third supplemental petition filed September 24, 1928, alleged for the first time that Eldridge became personally liable to pay the claim by an oral promise made just prior to the abandonment of the contract by Knott in September, 1920. It is obvious that this new cause of action was set up more than eight years after the accrual of the alleged cause of action based upon the verbal promise. Appellants excepted to Poirier's allegations (a) because the assertion of the new cause of action was out of place in a supplemental petition, and (b) because the same was shown to be barred by limitation. The court overruled these exceptions, but appellants, answering the factual allegations, also specifically pleaded and invoked the defense of limitation.

■■ The exceptions, in our opinion, should have been sustained, and the plea setting up the new cause of action stricken out; however, the defense of limitation was sustained by undisputed facts showing that more than eight years elapsed after the accrual of the alleged new cause of action before Poirier sought recovery thereon. In St. Louis, etc., Co. v. Larkin, 34 S.W.(2d) 693, 698, this court announced the oft-repeated rule that the petition on which a plaintiff goes to trial must

contain all affirmative grounds on which recovery is sought, and that omissions in this respect cannot be supplied in a supplemental petition, the office of which is simply to reply to the affirmative allegations contained in defendant's answer.

Poirier, in our opinion, showed no right to recover; therefore the court erred in refusing, on request, to direct a verdict in favor of appellants.

■ Appellants insist further that the judgment in favor of Knott against J. R. Eldridge was not authorized by and does not conform to the pleadings.

Knott based his right to recover on the following allegations: "Said defendant, Knott, alleges that he was the subcontractor operating under Mayfield under the terms of the written contract alleged by plaintiff, and that subsequent thereto, at the request of the defendants J. R. Eldridge and wife, Laura T. Eldridge, it was agreed that certain extras were to be put on the improvements in the amount of Thirty-four Hundred Eighty ($3480.00) Dollars above the Twelve Thousand Five Hundred ($12,500.00) Dollars provided, and that the said defendant J. H. Knott was to be paid therefor by the said Eldridge and wife through the said Mayfield and the said Mayfield agreeing to look to the defendant Eldridge for such amount; that in conformity with such original mechanic's lien contract and such subsequent agreement this defendant Knott proceeded with the construction of the improvements provided therein; that he continued in the construction of such improvements up until on or about the 20th day of September, 1920, at which time the said defendant Knott had completed all of the improvements called for therein, together with other and additional improvements; that said improvements were constructed in conformity with such contract and subsequent agreements, and the amount due and owing the said defendant Knott by the other defendants herein was the full amount of Fifteen Thousand Nine Hundred and Eighty ($15,980.00) Dollars, less the amount theretofore paid to the said Knott, towit, the sum of Eighty-Two Hundred ($8200.00) Dollars, leaving a balance due the said Knott of Seven Thousand Seven Hundred and Eighty ($7780.-00) Dollars; that the defendant Knott gave all parties notice of the furnishing of labor and material under such contracts; that thereafter the said other named defendants failed and refused to pay this said defendant Knott the said sum of money due and owing him under such contract and agreement and which amount was due and payable on or about the 20th day of September, 1920." He also adopted Poirier's allegations contained in his second amended original petition and supplements thereto then on file, but these

allegations, espoused by reference, do not, in our opinion, enlarge Knott's cause of action, but, if of any value, simply amplify the very concrete and positive allegations of his cross-bill. However, in reply to Knott's cross-action, appellants rested their relation to him on the written contract of March 3, 1920 (set up by Knott in the cross-action), and, among other things, alleged: "That the said J. H. Knott undertook to build and construct said house beginning thereon about March 17, 1920 under his said original independent contract, as above set out (the contract of March 3rd, 1920). That these defendants and J. H. Knott made the following changes in said original contract increasing the cost of said building in the following amount, towit:" Here follows certain additions amounting to $808, and the pleading proceeds: "Which was the agreed price for such changes between said contractor and these defendants, and which, together with the original contract price of $15,980.00, aggregated the contract price for said building and changes in the sum of $16,788.00, less certain window weights, etc. amounting to $5.70, making a total contract price, including said changes, of $16,782.30." As thus supplemented, Knott's cause of action based upon the contract of March 3, 1920, plus the changes agreed to. as alleged by appellants, fixed the utmost limit of recovery under the pleadings at $16,782.30. The undisputed facts and findings of the jury are these: Eldridge paid Knott, through Mayfield, $8,267.70; paid him in person $2,484.-25; paid Mayfield (for Knott) for material $4,760.68; Eldridge was compelled to pay, and did pay, to complete the improvements in accordance with the contract after Knott's abandonment, the sum of $2,283.75; the reasonable value of certain plumbing called for in the contract, but not installed by either Knott or Eldridge, was $400; the reasonable value of a furnace called for, but not installed by either party, was $400; and the reasonable value of certain screens called for, but not installed by either party, was $168, aggregating $18,764.38 paid and chargeable against Knott under the contract. Therefore, in view of the status of the pleadings, the undisputed facts and findings of the jury, we are of opinion, and so hold, that there was no basis whatever for the recovery of any amount by Knott against Eldridge, and that the court erred in refusing on request to direct a verdict in his favor.

In harmony with the views expressed above, the judgment of the trial court is reversed, and judgment here rendered, that appellees take nothing, that appellants go hence and recover of and from appellees the costs incurred in this, as well as in the trial court, and it is so ordered.

Reversed and rendered.