Melvin LEBO et al., Appellants,

v.

Alex DOCHEN et al., Appellees.

No. 10546.

Court of Civil Appeals of Texas.

Austin.

Feb. 12, 1958.

Rehearing Denied March 5, 1958.

Archer & Archer, L. Hamilton Lowe, Sam Amster, J. Hubert Lee, Russell G. Ferguson, Austin, for appellants.

Alvis & Carssow, Coleman Gay, James R. Meyers, James H. Rogers, James E. Danheim, Gibson R. Randle, James W. Townsend, Austin, for appellees.

HUGHES, Justice.

This suit involves the distribution of $11,192.25 paid into the registry of the court below by Alex Dochen and others who as owners had contracted with Henry Patton Ross as general contractor for the construction of a filling station in Austin, Texas. The sum paid into court by owners represents the balance due under their contract with Ross at the time owners first received .notice that mechanics' and materialmen's liens were being filed against their property.

All mechanics and materialmen who had perfected or attempted to perfect liens against the filling station and contractor Ross were made parties to the suit.

Ross having become bankrupt, Horace C. Barnhart, Jr., his trustee in bankruptcy, was substituted in his stead.

Trial to the court without a jury resulted in the establishment of some liens and the rejection of others. Those established were ordered paid out of the funds in the registry of the court and the balance of $5,892.65 was ordered paid to the trustee in bankruptcy. Among the rejected liens were those asserted by appellants Melvin Lebo, d/b/a Acme Glass Company, Reese Lbr. Company and L. F. Miears, Jr. and Doil J. Miears, d/b/a Miears Bros. Concrete Contractors.

The claim of each appellant is for labor and materials expended and used in the construction of the filling station under agreements with Ross, the general contractor. They had no contract with the owners. Appellants were all subcontractors.

Each appellant has briefed the case separately and since the facts are not the same as to all appellants we will dispose of each appeal separately.

Lebo:

The filling station was completed November 19, 1956. On December 11, 1956, Lebo gave to the filling station owners notice of its claim and intention to assert a lien against the property. The sufficiency of this notice is not questioned and its contents will not be recited.

On December 13, 1956, Lebo recorded an affidavit in the appropriate records in the office of the County Clerk of Travis County for the purpose of perfecting its lien to which was attached an itemized account showing a balance due of $1,741.65.

This affidavit recites a contract with the owners which the Trial Court found not to be correct and such finding is not challenged here. The affidavit does not state that "all just and lawful offsets, payments and credits known to affiant" had been allowed as required by Art. 5456, Vernon's Ann.Civ.St., nor does it contain any words of similar import.

■ Lebo contends that he is not controlled by Art. 5456 but by Subd. 3 of Art. 5453 with which he says he has fully complied. This contention is overruled upon the authority of Detroit Fidelity & Surety Co. v. State, 124 Tex. 145, 76 S.W. 2d 492, 496. The court there said:

"We think articles 5453 and 5456 must be read together and considered as a whole. Article 5456 defines the sufficiency of the affidavit to be used when the 'material is furnished to a contractor * * * and not the owner of the property.' Such is the case here."

The defect in the affidavit there was that it did not recite that the prices were "just and reasonable" as required by Art. 5456 which the court held to be fatal, saying:

"The question of injury is not involved. Absent the statute, and a substantial compliance therewith, absent the right. We do not say that there must be an absolute literal compliance, but there must be a substantial compliance. The omission of a statement that the prices charged were just and reasonable, or equivalent words, was the omission of a substantial and material requirement."

In Southern States Steel Corporation v. Fidelity & Deposit Co. of Maryland, 5 Cir., 80 F.2d 466, the court held that an affidavit omitting the words omitted here did not constitute a substantial compliance with Art. 5456, supra.

Both of the cases cited above arose under Art. 5160, V.A.C.S., providing for the execution of a bond by a contractor performing public works for the protection of laborers and materialmen who supply such

contractor but conditioned that their claims conform to the requirements of the Mechanic's Lien Statutes one of which is Art. 5456.

■ We can think of no good reason for Art. 5456 and accompanying statutes to be construed differently in proceedings under Art. 5160 than in this case. The same statutes should have the same meaning under all circumstances.

■ It is our opinion that the affidavit filed by Lebo was insufficient to create a lien on the filling station or on the fund paid into court and in view of this holding it is unnecessary that we determine other alleged deficiencies in the affidavit and account filed by him.

Reese:

Appellee Barnhart concedes that the Reese claim has only one defect which is identical with the one discussed by us in disposing of the Lebo appeal. The affidavit filed by Reese did not contain the statement that the claim was unpaid "after allowing all just and lawful offsets, payments and credits know to affiant."

Our decision here must be and is the same as we made in disposing of the Lebo appeal. Reese strenuously contends and argues well that he having complied with Sec. 3 of Art. 5453 has perfected his lien irrespective of the requirements of Art. 5456. We can only say that we feel bound by the decision in Detroit Fidelity from which we have quoted.

■ Reese also contends that Art. 5456 does not require the omitted language if, in fact, there are no "offsets, payments and credits." We cannot so read the statute, the pertinent portion of which is:

" * * * the prices therefor as set forth in the annexed account are just and reasonable, and that the same is unpaid (or the sum of $......, as

shown by said account, is unpaid) after allowing all just and lawful offsets, payments and credits known to affiant; * * *."

The quoted words are as applicable to an account wholly unpaid as to an account only partly unpaid.

The words "offsets and credits" have a much broader meaning than "payments." They encompass a complete balancing of accounts between the parties to the end that no lien will be established in excess of the amount which is in all fairness due the laborer or materialman.

Miears:

The objection to the Miears claim is that neither in the notice to the owners required under Art. 5453, subd. 3, V.A.C.S., nor in the affidavit therein required to be filed with the County Clerk does there appear an itemization of the labor and materials furnished nor does such affidavit show the date on which the debt became due.

The notice given owners was as follows:

"Gentlemen: You are hereby notified that L. F. Miears wishes to file and perfect his Laborer's and Materialman's Lien upon a business owned by you and now situated upon Lot 1, and the North 40 feet of Lot 2, Block 2, of the resubdivision of Shoalmont Division, located on Burnet Highway, premises known as 5400 Burnet Road, Austin, Travis County, Texas, that he now holds a claim against such structure in the amount of $6,402.00, such claim becoming due November 12, 1956.

"Signed L. F. Miears.
* * * * * *

"You are notified that the undersigned subcontractor has furnished under contract with H. P. Ross, contractor, the following items of material and labor to said contractor in the construction of a building and concrete drive described as being a service station for the purpose of selling automotive products such items being here set out with a showing of how much there is due

and unpaid on items furnished by the undersigned:

"Original slab _____ $ 7,300.00
Additional 10' x 140'
Slab on North side @ 40¢ __   560.00
Additional 10' x 10'
Ramp section @ 42¢ _____    42.00
Credits received _____  1,500.00

Balance _____ $ 6,402.00

"Signed L. F. Miears"

The affidavit of Mr. Miears, dated November 22, 1956, so much as is pertinent here follows:

"L. F. Miears, owner of Miears Bros. Concrete Contractors, affiant, makes oath and says that the following is a true and correct account of the labor performed for and materials furnished to H. P. Ross, a contractor of Austin, Travis County, Texas, to-wit:

"November 12, 1956
"Original slab _____ $ 7,300.00
Additional 10' x 140' slab
on North side @ 40¢ _____   560.00
Additional 10' x 10' Ramp
Section @ 42¢ _____    42.00

Sub-total  7,902.00
Credits received _____  1,500.00

Balance   $ 6,402.00

and that the prices thereof as set forth in said account above are just and reasonable and all lawful offsets have been allowed and the amount shown as due is unpaid, that said labor was performed and materials furnished for said H. P. Ross, to be used in the erection of a building owned, and situated on land owned, as affiant is informed and believes, by Alex Dochen, Hyman Sandgarten, and Jake Sandgarten, all of Travis County, Texas, which said land is described as follows, to-wit:

"Lot 1, and the north 40 feet of Lot 2, Block 2, of the resubdivision of Shoalmont Division located on Burnet Highway, premises known as 5400 Burnet Road, Austin, Travis County, Texas,

and which building is described as being a service station with concrete drives and said labor was performed and material furnished for said H. P. Ross under and by virtue of his contract between affiant and the said H. P. Ross."

Confining ourselves to the question of whether or not the itemization of the materials and labor furnished by Miears is sufficient we note that they cite as supporting authority only the case of Royal Indemnity Co. v. American District Steam Co., Tex. Civ.App., 88 S.W.2d 1091, writ dismissed, by this Court. There the materials furnished were listed separately but only a lump sum price for the lot was given. The court held this was a sufficient compliance with the statutes. The San Antonio Court of Civil Appeals refused to follow this case in Turner Roofing and Supply Company v. Union Pacific Insurance Company (Union Pacific Ins. Company v. Rufus A. Walker & Company) 289 S.W.2d 407, 410, writ ref., N.R.E., the court holding:

"For subcontractors to fix a lien, the price or value of articles and labor must be itemized rather than stated in terms of a lump sum."

We have examined the application for writ of error filed with the Supreme Court in that case and find that the only points presented by Petitioner Walker were that the court erred in holding that the account was not an itemized account and in holding that in order for a subcontractor to fix a lien "the price or value of articles and labor must be itemized rather than stated in terms of a lump sum, where the lump sum stated is the agreed contract price for the labor and material shown in the account." Walker predicated jurisdiction on a conflict of decision with the Royal Indemnity case.

▆ We consider the opinion in Walker to be decisive of the question before us. Here there is no itemization of price or

value. Furthermore, there was no itemization of labor or materials, in fact labor is not mentioned at all. Neither is there stated the size or dimensions of the "original slab" of what we presume to be concrete.

We conclude that Micars have no lien.

Micars make the further contention that under Art. 5464, V.A.C.S., they are entitled to be preferred over the claims of other creditors of Ross, except those of their class. This article reads:

"All sub-contractors, laborers and material men shall have preference over other creditors of the principal contractor or builder."

■ It is our opinion that Art. 5464 provides a preference only for subcontractors, laborers and materialmen who have liens.

This Article was originally a part of Sec. 14, Chap. 98, General Laws, Regular Session 21st Leg., 1889, p. 110. The Act was entitled "An Act to provide for the speedy and efficient enforcement of the liens of mechanics" etc. The Act deals exclusively with liens. It does not purportedly put mechanics, etc. in a preferred class of creditors except as they may comply with the procedure for establishing a lien. Sec. 14 commences "In all cases when a lien shall be filed under a provision of this Act * * *." It then proceeds to provide for the original contractor to defend suits brought by subcontractors and authorizes the owner to withhold money due the contractor until the suit is over and then follows this sentence:

"But no owner or proprietor shall in any case be required to pay, nor his property be liable for any money that he may have paid to the contractor before the fixing of the lien or before he has received written notice of the existence of the debt, and all subcontractors, laborers, and material men shall have preference over other creditors of the principal contractor or builder."

This section also provides that money owed by the owner to the contractor shall not be "garnisheed by other creditors to the prejudice of such sub-contractors" etc.

Sec. 14 of the Act of 1889 was codified as Art. 5635 in the 1911 Revised Civil Statutes. In the recodification of 1925 it was split into four separate statutes, Arts. 5463–5466. This does not, however, affect its interpretation.

Miears cite no cases which hold that noncomplying mechanics, etc. have a preference over general creditors of the contractor and we have found none. We do find cases which imply the contrary.

We quote from First Nat. Bank of Paris v. Lyon-Gray Lumber Co., 110 Tex. 162, 217 S.W. 133, 134:

"Articles 5623, 5635, [present Arts. 5463–66] and 5637 clearly express the legislative intent to make the filing of an itemized account, as well as written notice, a prerequisite to the enforcement of a debt incurred by a contractor or subcontractor with a materialman as against the owner or his property. Because the Ingram Millwork Company did not file any account or claim whatsoever in the county clerk's office, as required by this valid provision of the statutes, it failed to establish the right to enforce its claim against the bank or its building and lots.

"It would defeat the purpose expressed by the words of the law to say that the liability of the owner, or a lien on his property, might be enforced, without the filing of the required itemized account.

"The statutes are dealing with the owner's personal liability and a lien on the owner's property, when the filing of accounts is prescribed, and not with the mere enforcement of liens as against subsequent purchasers or lienholders, and we do not approve of the

expressions in the opinions of the Courts of Civil Appeals, in Beilharz v. Illingsworth, 62 Tex.Civ.App. 647, 132 S.W. [106], 109; Texas Builders' Supply Co. v. Beaumont Const. Co., Tex.Civ.App., 150 S.W. 772, and Steeling v. Alamo Iron Works, Tex.Civ. App., 173 S.W. [520], 522, to the effect that only subsequent purchasers may prevent the enforcement of a lien by reason of the failure of a materialman to file the required itemized account in the office of the county clerk.

"Nichols v. Dixon, 99 Tex. 263, 89 S.W. 765; Bullard v. Norton, 107 Tex. [571], 576, 182 S.W. 668, and Texas Glass & Paint Co. v. Crowdus, 108 Tex. [346], 351, 193 S.W. 1072, recognize compliance with the statutes to be indispensable to establish the right of the materialman to enforce his account for material furnished the contractor, as against the owner or his property."

In Green v. H. E. Butt Foundation, 5 Cir., 217 F.2d 553, 554, the court states:

"Under the lien laws of Texas, the H. E. Butt Foundation was relieved of its indebtedness to the contractor as soon as the above-mentioned liens were filed and perfected. Such liens seize and appropriate for the benefit of the lienors any money in the hands of the owner that is due or may become due and payable to the contractor. This appropriated fund is not a debt due the bankrupt, and does not fall into the hands of the trustee under the fiction of constructive possession. * * * If there is an undisputed excess in the Foundation's hands over the aggregate sum secured by valid liens, the trustee is entitled to a summary turnover order for the amount of said excess; but if there is a bona fide dispute as to the existence of any such excess, the trustee must file a plenary action to recover possession of the same."

If Miears are correct in their application of Art. 5464, then all mechanics, etc. are on an equal footing regardless of whether or not they have complied with the statutes and perfected their liens. This would result here in greatly diminishing the claims of laborers and materialmen who followed the law and perfected their liens. This is not and should not be the law. Baumann v. Cibolo Lumber Co., 226 S.W.2d 210, San Antonio Court of Civil Appeals.

No valid distinction can be drawn, in law, between the right to participate in the funds withheld from the contractor by the owner under the provisions of the Mechanic's Lien Statutes and the right to enforce a lien against the property of the owner. Such funds, if they are withheld in accordance with these statutes, are the extent of the owner's liability and such funds if improperly paid to the contractor measure the amount of liens which can be established against the property of the owner. Art. 5463. The existence of the lien is the basis of the right. Withholding funds merely protects the owner against foreclosure of the lien and facilitates its discharge.

The judgment of the Trial Court is affirmed.

Affirmed.