TRINITY UNIVERSAL INSURANCE COMPANY, Appellant,

v.

Floyd PALMER, d/b/a Palmer's Landscaping Service, Appellee.

No. 14503.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 18, 1967.

Rehearing Denied March 15, 1967.

Wiley & Thornton, Sam Gross, Lewin Plunkett, San Antonio, for appellant.

Lang, Byrd, Cross, Ladon & Oppenheimer, Stephen Lang, San Antonio, for appellee.

CADENA, Justice.

This suit was filed by appellee, Floyd Palmer, d/b/a Palmer's Landscaping Service, to recover $12,500.00, plus attorney's fees, for landscaping work done by him, as subcontractor, during the months of June, July, August, September, October and December, 1963, in connection with the construction of the Tradewinds Apartments in San Antonio. Named as defendants were F. B. & D., Inc., the owner of the building, Alvin Frieden, the general contractor, and appellant, Trinity · Universal Insurance Company (herein called "Trinity"), the surety on a payment bond executed in accordance with the provisions of Article 5472d.[1]

Palmer's suit against Trinity was severed from his cause of action against the owner and general contractor. The parties stipulated that Palmer had given Trinity sufficient notice to perfect his claim against the bond for work done by him during the months of September, October and December, 1963, and that Trinity was obligated to pay Palmer $2,005.14 for such work, plus $1,000.00 as reasonable attorney's fees in connection with the collection of such amount. The amount actually in dispute, then, is $10,494.86, representing Palmer's claim for work done by him during June, July and August, 1963, plus a reasonable attorney's fee for the collection of such amount.

The trial court entered summary judgment in favor of Palmer for the full amount of his claim, $12,500.00, plus $3,000.00 for attorney's fees. On this appeal Trinity contends that the trial court erred in awarding Palmer recovery for work done by him during June, July and August, and in awarding $2,000.00 as· attorney's fees in connection with such recovery.

The 1961 Hardeman Act (Articles 5452–5456, 5458–5460, 5463, 5464, 5466–5471, 5472c and 5472d), which applies to the construction of private, i. e., non-governmental, projects, is designed to protect not only contractors, subcontractors, materialmen and laborers, but also owners. Subcon-

---

1. All statutory references are to Vernon's Ann.Civ.St.

tractors and others furnishing labor or materials are protected by provisions establishing procedures by which they may perfect liens against the property of the owner and impound, in his hands, funds due the original contractor. If a payment bond has been provided in accordance with Article 5472d, the subcontractors can, by following the prescribed procedures, enforce their claims against the surety on such bond. The Act protects the owner by limiting, at least theoretically, his potential liability to the amount of the original contract. In addition, a prudent owner may insulate himself and his property from liability by insisting that the original contractor furnish a payment bond.

The bond executed by Trinity in this case was conditioned, executed, approved by the owner, and filed as required by the first three paragraphs of Article 5472d, so that if Palmer followed the prescribed procedures, he may enforce his claim against Trinity.

Paragraph 4 of Article 5472d enumerates two methods by which a claimant may perfect a claim against the payment bond: (1) "in the manner prescribed for fixing and securing a lien by Article 5453"; and (2) by giving to the original contractor all notices required by Article 5453 and, in addition, giving to the corporate surety all notices which, under Article 5453, are required to be given to the owner. Palmer does not contend that he followed the second alternative, so that the validity of his claim against Trinity for work done by him during the three months in dispute depends upon whether he perfected his claim against the bond "in the manner prescribed for fixing and securing a lien by Article 5453".

Palmer timely filed his affidavit claiming a lien, as required by Paragraph 1 of Article 5453. However, Paragraph 2 of that statute declares that if the lien claimant is other than an original contractor, such claim shall not be valid or enforceable unless the claimant complies with the notice provisions set out in subsequent por-

tions of Article 5453. Paragraph 2 further provides that compliance with applicable notice provisions "shall be conditions precedent to the validity of such claims".

The notice provisions applicable to lien claims asserted by subcontractors which arise from debts incurred by the original contractor are found in Paragraph 2b(2) of Article 5453. It is conceded that the notices on which Palmer relies were timely given, and the only question is whether such notices were in the form required for the creation of a lien. After setting forth the necessity for giving notice to the owner, Paragraph 2b(2) continues: "A copy of the statement or billing in the usual and customary form shall suffice as a notice under this subparagraph; provided, however, if such statement or billing is to be effective to authorize an owner to retain funds for the payment of such claim as provided in Article 5463 of this Act, it shall contain or be accompanied by some form of statement to an owner to the effect that if the bill remains unpaid he may be personally liable and his property subjected to a lien unless he withholds payments from the contractor for the payment of such statement or unless the bill is otherwise paid or settled." (The statement concerning the potential liability of the owner and his property is hereinafter referred to as the "statutory warning.")

Trinity contends that, since the copies of statements mailed by Palmer to F. B. & D., Inc., the owner, did not contain the statutory warning, they were insufficient to create a lien on the owner's property and that, therefore, Palmer has not perfected a claim against the bond by proceeding "in the manner prescribed for fixing and securing a lien by Article 5453." In his brief Palmer argues (1) that compliance with the provisions relating to the creation of a lien is not necessary in order to perfect a claim against the bond; and (2) that if compliance with such provisions is a condition precedent to the liability of the surety, the notices sent by Palmer to the

owner were sufficient to create a lien despite the absence of the statutory warning.

◼ Because Paragraph 7 of Article 5472d precludes the imposition of liability on the owner or his property where a payment bond has been filed, Palmer insists that an enforceable claim against the bond can be perfected without taking the steps necessary for the creation of a lien. But this argument ignores the plain language of Paragraph 4 of that Article, which enumerates only two methods of perfecting a claim against the bond. Since Palmer did not give the required notices to both the original contractor and the surety, he can reach the bond only if he proceeded in the manner prescribed by Article 5453 for fixing and securing a lien. The statute provides no third avenue leading to the liability of a surety. The conclusion is inescapable that, unless a claimant has given the required notices to the original contractor and the surety, he must follow the statutory procedure which, in the absence of a payment bond, would have resulted in the creation of a lien against the property of the owner. Any other construction would deny effect to the plain meaning of the language, "in the manner prescribed for fixing and securing a lien."

Palmer next contends that his failure to give the owner the statutory warning does not constitute a failure to proceed in the manner prescribed for fixing and securing a lien. This theory is based on the language in Paragraph 2b(2) of Article 5453, to the effect that a copy of the statement or billing in the usual form shall be sufficient as a notice. According to this interpretation of Paragraph 2b(2), the mailing of a copy of the billing is sufficient, of itself, to create a lien, and the statutory warning is required only if the claimant, in addition to having his claim secured by a lien, desires to impound, in the hands of the owner, funds due the original contractor.

The judicial interpretation of our lien statutes prior to the adoption of the Hardeman Act discloses the legislative purpose in providing that a copy of the billing or statement shall be sufficient as a notice. Prior to 1961, our lien statutes dealt only in a cursory manner with the question of notice. Under Article 5453, as it existed prior to its amendment in 1961, it had been held that the notice to the owner, as well as the lien affidavit filed by the claimant with the county clerk, must itemize the value of articles furnished and labor done, and that a statement of the total price in a lump sum was not sufficient. Lebo v. Dochen, 310 S.W.2d 715 (Tex.Civ.App., 1958, writ ref'd n. r. e.). The language on which Palmer relies was plainly intended to eliminate the need for such particularization. Paragraph c of Article 5455 eliminates the need for such itemization in the affidavit.

To give to the language relating to the sufficiency of the notice an effect beyond that of eliminating the need for itemization would be to create a conflict between Paragraph 2b(2) of Article 5453 and Paragraph 2 of Article 5463, which declares that the owner shall not be required to pay, nor his property be liable for, any money that he may have paid to the original contractor before he is authorized, under Article 5463, to retain funds due the contractor. Paragraph 1–b of Article 5463 authorizes such retainage "[u]nder notices of claims sent under subparagraph 2–b of Article 5453, immediately upon receipt of such notices" by the owner. Since Palmer's claim is that of a subcontractor, arising from a debt incurred by the original contractor, Paragraph 2b(2) of Article 5453 is applicable and, as has been noted, under that paragraph the owner is not authorized to withhold funds unless the statement or billing contains, or is accompanied by, the statutory warning. Under Palmer's interpretation, the owner's property would be liable, despite the provisions of Paragraph 2 of Article 5463, for money paid by the owner to the original contractor before the owner is authorized to withhold funds.

■■ Since both Articles 5453 and 5463 are integral parts of what is clearly a comprehensive legislative scheme, they must be construed together in such a way as to achieve the presumed legislative intent to create a consistent and sensible set of regulations. A construction which creates a conflict among the various parts of the legislative plan is, if possible, to be avoided.

■ If we construe Paragraph 2b(2) of Article 5453 as sanctioning the creation of a lien only if the owner fails to withhold funds *after* he is authorized to do so by receipt of the statutory warning, all conflict between that provision and Paragraph 2 of Article 5463 disappears. This is a reasonable construction of Paragraph 2b(2) of Article 5453, since the wording of the required warning is clearly to the effect that a lien will attach "unless" the owner withholds funds due the original contractor. This language makes the failure to withhold funds a condition precedent to the creation of the lien. Since the giving of the warning is a condition precedent to the owner's authority to withhold funds, it must be concluded that the giving of the warning is a condition precedent to the creation of the lien.

The right to participate in the funds withheld from the original contractor cannot be separated from the right to enforce a lien against the owner's property. Lebo v. Dochen, supra, 310 S.W.2d at p. 721.

■ This construction gives effect to all of the language of Paragraph 2b(2) of Article 5453. The provision that a copy of the statement or billing shall be sufficient eliminates the requirement of itemization of the prices of materials furnished and labor done, and the language of the proviso concerning the warning is given full effect in a manner which prevents any conflict with Paragraph 2 of Article 5463.[2]

Our conclusion finds support in the holding by the Texarkana Court of Civil Appeals in Texas Northern Ry. Co. v. Logwood, 401 S.W.2d 886 (1966, no writ). There, one of the reasons for denying a subcontractor's claim of a lien was the fact that the notice given to the owner "was not couched in the language requiring [him] to withhold retainage * * *." 401 S.W.2d at p. 890. See also Berry v. McAdams, 93 Tex. 431, 55 S.W. 1112 (1900); Eldridge v. Poirer, 50 S.W.2d 888, 889 (Tex.Civ.App., 1955, no writ); Cox v. State, Tex.Cr.App., 274 S.W.2d 844; Marek v. Goyen, 346 S.W.2d 926 (Tex.Civ. App., 1961, no writ).

Palmer calls our attention to the following language in Article 5454: "The demand herein provided for may accompany the original notice of nonpayment or of a past-due claim; may be stamped or written on the face of said notice in legible form; or may be subsequently given by claimant, provided, however, that no such demand shall be made after the time has expired within which the claimant may secure his lien under this Act unless a lien for such demand has been secured."

We do not agree that the provision allowing the "demand" to be made after the claimant has secured his lien reflects, as Palmer contends, a legislative contemplation of instances where the lien has been secured before the claimant has demanded a retention of funds. Article 5454 merely provides a method by which an owner may pay the undisputed claim of a person other than the original contractor. By its express terms it is applicable only where "an owner has withheld a payment or payments

---

2. This construction is also consistent with decisions holding that a subcontractor, since he has no contractual relations with the owner, may only claim payment from the owner from funds due and owing to the contractor which are still in the hands of the owner, and then only if the sub-contractor has authorized the owner to withhold such funds. See Lonergan v. San Antonio Loan & Trust Co., 101 Tex. 63, 104 S.W. 1061 (1907); McConnel v. Frost, 45 S.W.2d 777 (Tex.Civ.App., 1932, no writ).

from the original contractor pursuant to the provisions of Article 5463 * * *." We have already pointed out that, under Article 5463, the owner in this case was not authorized to withhold funds unless he had been given the statutory warning. The "demand" which, under Article 5454, may be made after the lien has been secured, is obviously the demand for payment and not a demand for withholding of funds. This conclusion is strengthened by the fact that Article 5454 requires that a copy of the "demand" be sent to the original contractor, while Paragraph 2b(2) of Article 5453 expressly provides that, where the claim is that of a subcontractor, no notice need be given to the original contractor.

It is true that under Paragraph 2 of Article 5463, where a lien affidavit has been filed by a subcontractor, the original contractor must, at his own expense, defend any action brought thereon. In case judgment is rendered against the owner or his property, he is entitled to deduct, from the amount due the contractor, the amount of such judgment, and, if the owner has settled with the contractor in full he is entitled to recover from the contractor any amount so paid for which the contractor was originally liable. But nothing in this provision supports the inference that a lien may be affixed by a subcontractor without the giving of the statutory warning. The very next sentence of Paragraph 2 contains the provision, already noted, which, in effect, limits the liability of the owner and his property to money paid to the original contractor after receipt of the warning.

Next, it is argued that the filing of the lien affidavit by Palmer, in and of itself, was sufficient to perfect a mechanic's lien on the property of the owner. This suggestion flies in the teeth of Paragraph 2 of Article 5453, wherein it is provided that the giving of the notices required by Paragraph 2b(2) of that Article shall be con-

ditions precedent to the validity of the lien claim of a subcontractor.

■ Palmer insists that, under the facts of this case, he can qualify as an "original contractor," since the original contractor, Frieden, was also the president of F. B. & D., Inc., the owner. If Palmer was, in fact, an original contractor, then the mere filing of the lien affidavit was sufficient to create a lien. Paragraph 1, Article 5453. Paragraph 2e of Article 5452 defines an original contractor as "one contracting with an owner, directly [or indirectly] through his agent." Although this is a summary judgment proceeding, we find in the record an instrument, signed by the trial judge, designated "Findings of Fact." One of these so-called findings is to the effect that Palmer entered into an agreement with Frieden, "as general contractor," to perform the landscaping services in question. Whatever may be the propriety of findings of fact in a summary judgment case, this instrument is approved by counsel for both Palmer and Trinity, and we treat it as stipulations of fact. In effect, then, Palmer has stipulated that he contracted with Frieden as general contractor, and not as agent of the owner.

■ We overrule Palmer's contention based on the applicability of Paragraph 1 of Article 5452–1, relating to "sham" construction contracts. That statute became effective August 30, 1965, after all the transactions in question had taken place and this suit had been filed. Even if we were inclined to give retroactive effect to that enactment, we find nothing in the record which establishes, as a matter of law, that the contract between F. B. & D., Inc., and Frieden was entered into "without a good faith intention on the part of the parties that it was to be performed" by Frieden.

The judgment of the trial court is reversed and the cause is remanded for further proceedings.