ANAHUAC, INC., et al., Appellants,

v.

Larry WILKES, et al., Appellees.

No. 13258.

Court of Appeals of Texas, Austin.

Oct. 7, 1981.

Samuel D. McDaniel, Don. W. Kothmann, McDaniel & Travis, Austin, for appellants.

Phil Mockford, Austin, for James H. Collins.

James M. Steed, Austin, for The Burke Co.

James E. Anderson, Fabela & Anderson, Austin for Larry Wilkes Steel Co.

SHANNON, Justice.

This is an appeal from the judgment of the district court of Travis County in a construction contract case. In the summer of 1977, Anahuac, Inc., contracted to build a Handy Dan store located in Austin. Thereafter, Anahuac entered into a subcontract with James H. Collins to furnish labor and materials to do the concrete work on the project. Other parties on appeal are Centex Materials, doing business as Travis Materials, Larry Wilkes, and the Burke Company who are subcontractors to Collins.

The main dispute before this Court is between Anahuac, the general contractor, and Collins, the subcontractor. In its cross-action against Collins and his bonding company, Anahuac pleaded that Collins breached the contract and that it had to complete the concrete work on the Handy Dan job to its damage of over $50,000. In his cross-claim against Anahuac, Collins alleged that when he had substantially completed the work on the Handy Dan project, Anahuac barred him and his employees from the job site and that as a result, he was unable to complete the contract. Collins sued to recover $48,919.60, the sum he claimed due under the contract.

After a bench trial, the district court rendered judgment, among other things, that Anahuac take nothing; that Collins recover $48,919.60 and attorney's fees from Anahuac and that Collins' mechanic's and materialmen's lien against the Handy Dan property be foreclosed. The judgment provided further that Collins' subcontractors, Travis Materials, Larry Wilkes, and the Burke Company, recover against Collins $14,036.31, $19,474.00 and $3,374.18, respectively, along with attorney's fees. The judgment, however, recited that each mechanic's and materialmen's lien claimed by Collins' subcontractors was not properly perfected and it further canceled each such lien.

The Handy Dan structure consisted of a concrete slab with concrete tilt walls. Proper construction was dependent upon the orderly pouring of the slab and walls. There is no question but that there were major problems with Collins' work. In fact, the job architect described the concrete work, generally, as "just horrible." One major problem was a mistaken pour resulting in a smaller part of the slab being of red concrete than was required by the plans and specifications. Because red concrete on one side of the store is a Handy Dan trademark, the job architect required that part of the concrete slab be removed and a new pour made to obtain the specified dimensions of red concrete. In addition, the architect testified that the floor, as finished, was not level and was "really too wavy" in places.

A second key mistake in the concrete work occurred in the pour of the walls in that the joist pockets were incorrectly placed. Joist pockets are cut outs in the concrete walls where steel joists are fitted. When the wall panels, as poured, were erected, the joist pockets did not line up. The pockets had to be "reengineered" to provide supports for the joists. Whoever laid out the joist pockets missed a dimension on the wall panel and, as a result, all of the measurements were off.

Another deviation from the plans and specifications that caused even more difficulty was Collins' failure to chamfer the wall panels. The plans required that all exposed sharp corners be chamfered so that the concrete work would be neat instead of ragged and so that the panels would not have nicked corners. Collins testified that he chamfered some panels but not others. The job architect required that the corners be patched and ground down, all of which was expensive and time consuming.

Finally, the reveal and labrado in the concrete wall panels were unacceptable to the architect. The reveal, as we understand, is an architectural form that is cast

into wall panels to give relief to the panels; it consists of a groove or a dividing line in the concrete. The labrado is a form or mold in which concrete is poured so as to give the concrete wood-grain appearance. The reveals did not meet on the outside walls and had to be redone by sawing and chipping. The labrado had rough edges which required patching.

Although no one disputes that there were mistakes in the concrete work, Collins and his foreman testified by way of excuse that in making the respective pours, they followed the directions of Anahuac's representative at the job site.

The contract price for the concrete work was $142,841.75. Pouring concrete began in August of 1977. After the architect's inspection report at the end of October, 1977, Anahuac began issuing checks made out jointly to Collins and some of his suppliers, because the suppliers had informed Anahuac that Collins had not paid their August and September bills. Collins was barred from the job in December, 1977, and at that time he had been paid $92,422.15. Anahuac's evidence was that Collins, after direction, corrected some of the problems in the pour, but that he failed to remedy the problems with the reveal and the labrado.

The district court, upon request, filed findings of fact and conclusions of law. The district court found globally that Anahuac wrongfully terminated Collins' performance under the contract. The court found no facts supporting its determination that Collins was wrongfully terminated. The court's findings of fact and conclusions of law make no reference to the provisions of the contract that purport to govern the performance of the contract.

Both parties pleaded the contract and sought to recover under it. Collins made no effort to avoid any provision of the contract; neither did he plead or prove fraud, ambiguity, overreaching, or bad faith.

To protect the general contractor from deficiencies in the concrete work, the contract provides in paragraph eleven:

" . . . if Subcontractor shall fail in any other manner to perform the whole or any part of any covenant or agreement contained or assumed herein then and upon the occurrence of such an event (and Contractor's finding and judgment with respect thereto shall be final and bind Subcontractor absolutely), Contractor shall have the right, after sending the Subcontractor notice of its intention by mail or telegraph twenty-four (24) hours in advance (1) to provide materials and labor in addition to or in place of any supplied by Subcontractor and deduct the cost thereof and expense relating thereto from the contract price payable hereunder, and after or without exercising said privilege, also (2) to bar Subcontractor from said project (with or without terminating this subcontract) and take over and complete the work covered hereby, either by itself or by contracting with others to do so or by any combination of such methods, all at the expense of Subcontractor . . . "

■ An examination of paragraph eleven demonstrates that Collins agreed to place the final decision regarding adequacy of his performance in Anahuac's hands. Anahuac's satisfaction was the conclusive test of whether the concrete work was properly performed. The validity of such contractual provisions is well recognized, 44 A.L.R.2d 1114, and the judgment of the party regarding adequacy of performance will be upheld if made in good faith. *Black Lake Pipe Line Co. v. Union Const. Co.*, 538 S.W.2d 80 (Tex.1976).

"With regard to construction contracts providing that performance shall be to the satisfaction of one party, most courts have applied an objective test in determining whether that party acted in good faith. 5 Williston on Contracts § 675B at 210; 3A Corbin on Contracts § 645, at 85; Annot., 44 A.L.R.2d at 722. We adopt the reasonableness test in the instant case for determining whether to uphold the decisions of the [party's] inspectors." *Black Lake Pipe Line Co. v. Union Const. Co., supra*, at 89.

■ Whether Anahuac acted in good faith (whether it, as a reasonable person, should have been satisfied with the concrete work) is a question of fact. We view the district court's determination that Anahuac wrongfully terminated Collins to be, in effect, a finding that Anahuac did not act in good faith or that it did not act reasonably. We are of the opinion that there was insufficient evidence in support of the district court's determination.

■ There is no serious dispute but that much of the concrete work was improperly done. Nevertheless, Collins claims that paragraphs six and nine of the contract made him subject to the supervision and control of Anahuac and its representatives. In that connection, Collins' evidence was that Anahuac's representative instructed him to make the pour of the slab and the walls in the manner which resulted in a disproportionate area of the slab being the wrong color and the joist pockets being in the wrong place. Collins maintains, in effect, that his errors in the pours were thereby excused.

Neither paragraph six nor nine confers the right on the general contractor to control the manner in which the pour was made. Paragraph six provides that the general contractor may direct the sequence which the subcontractor shall observe in the performance of the work. Paragraph nine confers the right to order changes in the work, by modifying the same, adding thereto or subtracting therefrom.

It is true that there is no evidence disputing Collins' and his foreman's testimony that Anahuac's representative directed him to make the pour of the slab and the walls in the manner that resulted in the problems of color and misaligned joist pockets. The district court apparently believed that testimony, and we accept it as true. Nonetheless, ultimate responsibility for the work is still placed upon Collins by paragraph ten of the contract that provides as follows:

"... Subcontractor accepts sole and exclusive responsibility for the work covered hereby, shall provide continuous supervision for such work during progress thereof at the job site, and no assistance which representatives of the Owner or Contractor may give to Subcontractor shall operate to relieve Subcontractor from complete responsibility for such work...."

Collins made no effort by pleading or proof to avoid paragraph ten. The parties in paragraph ten contracted in advance that no assistance, ill-advised or not, by Anahuac's representative should operate to relieve Collins from "complete responsibility for such work." It is difficult to see how the parties could have provided more clearly that Collins retained the entire responsibility for the concrete work even though a particular error may have resulted from the direction of Anahuac's representative. See *City of Austin v. Cotten*, 509 S.W.2d 554 (Tex.1974). Accordingly, this Court will enforce paragraph ten by disregarding the apparent fact that Anahuac's representative may have erroneously directed the pour of the slab and the walls in our assessment of the evidence in support of the district court's finding that Anahuac acted unreasonably in concluding the concrete work was inadequate.

With respect to the inadequacies of the chamfering, the reveal, and the labrado, we do not understand Collins to contend that Anahuac's representative was in any way responsible. Based upon these inadequacies, alone, it would be concluded that Anahuac was justified in exercising its rights under paragraph eleven.

This Court has examined the entire record, and, considering the evidence as a whole, has concluded that the district court's finding that Anahuac acted unreasonably in refusing to approve the concrete work was contrary to the great weight and preponderance of the evidence.

■ United States Fidelity & Guaranty Company, Collins' bonding company, complains of judgment in favor of Collins' materialmen against it in face of the fact that the judgment specifically recited that the materialmen's liens were not properly perfected and hence canceled. The bonding

company's position is that proof of the existence of a valid mechanic's and materialmen's lien and the notice requirements attendant thereto was a prerequisite for the appellee materialmen to recover against a bonding company on its payment bond. The bonding company relies upon *Trinity Universal Insurance Co. v. Palmer*, 412 S.W.2d 691 (Tex.Civ.App.1967, writ ref'd n.r.e.).

As we understand, the bond in *Palmer* was one described in Tex.Rev.Civ.Stat.Ann. art. 5472d between the owner, general contractor and bonding company, *i. e.*, a "Hardeman Act bond." Since it was a "Hardeman Act bond," the prerequisites for recovery under art. 5472d applied, and the subcontractor in *Palmer* was thereby defeated in his effort to recover from the bonding company.

Collins' subcontractors contend that the bond herein is a "non-Hardeman Act bond," and that the prerequisites for recovery under art. 5472d do not apply. A bond is a "Hardeman Act bond" (1) if the bond is furnished and filed in attempted compliance with art. 5472d, or (2) the bond by its express terms evidences its intent to comply with art. 5472d. Tex.Rev.Civ.Stat.Ann. art. 5472d § 8.

In the case at bar, there was no evidence that the bond was filed, nor was there an express provision in the bond that it was intended to comply with the Hardeman Act. We have concluded that the bond was not a "Hardeman Act bond," and, accordingly, the subcontractors could recover on the bond itself. See *Sherwin-Williams Co. v. American Indemnity Co.*, 504 S.W.2d 400 (Tex.1974).

That part of the judgment granting recovery by Collins against Anahuac is reversed and the causes of action involving the dispute between Anahuac and Collins and the bonding company are remanded for a new trial; in all other respects, the judgment is affirmed.

Reversed and Remanded in Part and Affirmed in Part.