## J. F. BERRY ET AL. V. A. G. McADAMS ET AL.

### No. 839. Decided March 19, 1900.

**1. Mechanic's Lien—Material Furnished Contractor—Notice.**

One who furnishes lumber to a contractor for the erection of a building can not enforce a lien therefor against the owner who has settled with the contractor in full before receiving written notice of the claim, as provided by Revised Statutes, article 3296, though such owner had actual verbal notice of the materialman's claim before settling. (Pp. 435-437.)

**2. Same.**

The practical effect of Revised Statutes, articles 3296, 3308, is to garnish so much of the sum due from the owner of the building as may be necessary to pay for material furnished; but the owner and his property are exempted from liability unless written notice be given before he pays the contractor. (P. 437.)

**3. Same—Constitution—Statute.**

Whether or not, independently of the statute, the Constitution gives a lien to persons who do not contract with the owner of the property, the requirement that the Legislature provide for the enforcement of the lien (Constitution, article 16, section 37) gives it power to enact the law requiring notice in writing by a sub-contractor to the owner before he settles with the contractor. Rev. Stats., art. 3296. (P. 437.)

QUESTION CERTIFIED from the Court of Civil Appeals for the Third District, in an appeal from Collin County.

*Abernathy & Beverly* and *R. T. Shelton,* for appellants.—Housewright, Swayze & Co. being the beneficial owners of the building, and J. F. Berry having contracted to erect the building and furnish all the material for that purpose, and McAdams having made no contract with the owners of the building, but having sold his lumber and material direct to Berry on a verbal contract with Berry alone, and not having made the building himself, McAdams has no lien under the Constitution on the building for the value of the material furnished J. F. Berry. This proposition is supported by the facts found and certified by the Court of Civil Appeals. Gilmer v. Wells, 43 S. W. Rep., 1058; Horan v. Frank, 51 Texas, 404; Harris County v. Campbell, 68 Texas, 28; Riter v. Houston Oil Co., 48 S. W. Rep., 758.

The Constitution declares that "mechanics, artisans, and materialmen of every class shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon or material furnished therefor." It will be observed that this article only gives a lien on the buildings, etc., made or repaired by them. If McAdams, the materialman, neither made nor repaired the building, then he has no lien under the Constitution although he may have sold the material to the man (Berry) who did make it. If it was not the intention of the framers of the Constitution to thus limit the lien, why use the words "made or repaired by them" after the words "mechanics, artisans, and materialmen?" The word "them" refers back to all three of the classes mentioned, to wit, mechanics, artisans, and materialmen, and it can not

be made to apply to any one and not the others without doing violence to a plain expression of the English language. A materialman has no lien under the Constitution unless he both furnish the material and make or help to make the building on which he seeks to fix the lien.

Now this article does not say that materialmen shall have a lien on all buildings for the erection of which they may furnish material. The first part of the article clearly indicates what buildings the materialman may have his lien on, and clearly says the lien shall be on those made or repaired by him, and not on those which he merely furnishes material for. The latter part merely shows for what he shall have his lien and simply states that it shall be for the value of the material furnished therefor, that is, to make or repair the building. It appears clear that McAdams neither made nor repaired the building, but simply sold the material which was used by the maker in erecting the house, and consequently has no lien under the Constitution.

If McAdams, the materialman, had a lien on the building under the Constitution, then the same was lost by his failing to file his itemized account for record in office of county clerk before the owners, Housewright, Swayze & Co., settled with Berry, the builder. Constitution, sec. 37, art. 16; Sayles' Stats., arts. 3294, 3295, 3296.

Under the statute, the materialman must file his itemized account for record and give notice to the owner of the building before he can fix a lien. If the owner had paid all the contract price before that has been done, then the lien is lost. The questions certified show that all the contract price was paid before the account was filed for record. The Constitution, which gives a lien, in the same article requires that the Legislature shall provide for a speedy and efficient enforcement of the same. If the Legislature makes the provision demanded by the Constitution, and it has, then the enactment becomes an essential part of the law and must be followed, otherwise the lien will be lost. If that be not the effect, then why this constitutional provision for the Legislature to make provision for its speedy and efficient enforcement? The Legislature, in pursuance of the Constitution, having made the provision, that becomes the only mode by which the lien can be preserved or enforced, and a failure to comply with this statute, by not recording the itemized account before the contract price is paid, will necessarily forfeit the lien.

Berry had a right to compel Housewright, Swayze & Co. to pay him at any time before the lien was fixed, the money being due. If Berry had the right to compel the payment, it would be no defense to say, "I will not pay because McAdams may file a lien on the building, although he has not done so up to the time of suit." Berry would be postponed in the collection of his money on the bare possibility that McAdams might fix a lien at some future time. And in the meantime, work on the building might be suspended and work abandoned, as in this case, and the entire contract between the owner and the builder might be broken

up and destroyed. Such a construction would lead to too serious results on the mere possibility of McAdams filing a materialman's lien. The better and more sensible construction would be to require the material-man to file his lien at once, and if he failed or delayed until the contract price is all paid out, he alone should be the sufferer. Let him who trusts most suffer most.

In order to secure a lien under the statute, the statute must be strictly followed. It is nowhere provided that simple notice, given by the ma-terialman to the owner, that material furnished to the builder had not been paid for, will fix a lien. The law requires that an itemized account be filed for record and notice given. If that be not done before the con-tract price is paid, the lien is lost. In this case the whole price was paid before the materialman filed his account and gave notice to the owners.

*J. H. Pearson* and *M. H. Garnett,* for appellees.—McAdams has the lien created by the Constitution and which is independent of the statute. Bassett v. Mills, 89 Texas, 166; Johnson v. Amarillo Improvement Co., 88 Texas, 511; Elevator Co. v. Maverick, 88 Texas, 492; Implement Co. v. Electric Light Co., 74 Texas, 607; Trammell v. Mount, 68 Texas, 215.

The only object and purpose of the law in requiring notice to be given is that the owner of the property may protect himself when he settles with the contractor; and if he, the owner, has such notice he is bound by it. Strang v. Pray, 89 Texas, 529; Padgitt v. Dallas Brick and Construction Co., 92 Texas, 628.

The Constitution creates the lien at the time of the transaction, and the lien of the appellee, though not fixed before record of the contract or bill of particulars, when it is fixed relates back to the time when the material was furnished, and takes precedence of all claims to the property improved, which have been fastened upon it since that time. Imple-ment Co. v. Electric Light Co., 74 Texas, 607; Trammell v. Mount, 68 Texas, 215; Schultze v. Adams Ice Co., 2 Texas Civ. App., 237.

Within the time allowed for the lien to be fixed by being recorded, every person dealing with the property is charged with notice of the existence of that lien. Implement Co. v. Electric Light Co., 74 Texas, 607; Padgett v. Dallas Brick and Construction Co., 92 Texas, 628; Trammell v. Mount, 68 Texas, 215.

The fact that McAdams had no contract with Housewright, Swayze & Co. can not prevent him from asserting such lien. Bassett v. Mills, 89 Texas, 166; Johnson v. Improvement Co., 88 Texas, 511.

Housewright, Swayze & Co. having actual notice, could not settle with Berry and defeat the lien before the expiration of the time allowed by the statute for filing and recording the account and giving notice in writing.

BROWN, Associate Justice.—The Court of Civil Appeals for the Third Supreme Judicial District has certified to this court the following statement and question:

"A. G. McAdams brought this suit against Housewright, Swayze & Co. and certain other defendants who have not appealed, to recover upon an account for lumber furnished for the construction of a house and to foreclose an alleged lien upon the house. The record shows Housewright, Swayze & Co. to be the beneficial owners of certain town lots. They caused a contract to be made with J. F. Berry for the construction of a storehouse on said lots, but they made no contract with McAdams. Berry made a verbal contract with McAdams, a lumber dealer, to furnish the lumber used in the contruction of the house, estimated to aggregate about $1500. This contract was made in August, 1894, and Berry was to pay for the lumber as follows: $500 November 6 and $500 December 6, 1894, and $500 on January 6, 1895. Before any of the lumber was furnished, Housewright, Swayze & Co. were apprised of the terms of the contract between Berry and McAdams. McAdams commenced furnishing the lumber in August, and continued to do so as required up to January 13, 1895, the total amount furnished amounting to $1513.06. It was not shown that he did anything else towards the construction of the house than furnishing the lumber.

"On January 21, 1895, McAdams filed his account for record, and gave the necessary written notice to secure and preserve his lien under the statute. The lumber so furnished to Berry was used in the construction of the storehouse referred to.

"When the first payment for the lumber fell due, McAdams notified Housewright, Swayze & Co. that it had not been paid, and from that time on they had notice of the fact that Berry was owing McAdams for the lumber that had already been and was still being furnished for the building.

"Prior to January 21, 1895, Berry threw up the contract for the construction of the house, and it cost over $1000 to complete it; and at the time of his abandonment of the contract, Housewright, Swayze & Co. had paid him all that he was entitled to receive under his contract, and have paid out all that they agreed to pay for the construction of the building; but they had not settled with him nor made such payments at the time they first received notice of McAdams' claim. A judgment for the debt and foreclosure of lien was rendered.

"The Constitution of this State declares that 'mechanics, artisans and materialmen of every class, shall have a lien upon the buildings and articles made or repaired by them, for the value of their labor done thereon or material furnished therefor;' and it has been repeatedly held in recent years that this provision of the Constitution is self-executing and fixes and secures the lien referred to, without the aid of the statute. But whether or not one asserting a lien created by the Constitution and without reference to the statute must show a contract with the owner of the building, does not appear to have been decided by the Supreme Court,

and there appears to be some conflict of opinion among the courts of civil appeals on the question. See Gilmer v. Wells, 43 S. W. Rep., 1058; Riter v. Houston Oil Refining and Manufacturing Co., 48 S. W. Rep., 758, and Padgitt v. Dallas Brick and Construction Co., 51 S. W. Rep., 529.

"Therefore, this question being one of importance and material in this case, it is certified to the Supreme Court for decision, the specific question being:

"Under the facts stated above, had McAdams a lien created by the Constitution and independent of the statute, which could not be defeated by Housewright, Swayze & Co. settling with Berry, after they received notice of the claim? Or will the fact that McAdams had no contract with Housewright, Swayze & Co. prevent him from asserting such lien? Or if the lien existed, was it subject to the right of Housewright, Swayze & Co., though having actual notice of the claim, to settle with Berry and defeat the lien before the expiration of the time allowed by statute for filing and recording the account and giving notice in writing?"

To the question propounded, we answer: The validity of McAdams' lien against the property of Housewright, Swayze & Co. depends upon his compliance with the requirements of the statutes enacted in pursuance of the Constitution of this State. From the statement, it appears that McAdams did not give written notice of his claim for material furnished to Housewright, Swayze & Co. before they had paid to Berry the amount due him under the contract for building the house, and, by the terms of article 3308, Revised Statutes, Housewright, Swayze & Co. were not liable to McAdams for the material furnished to the subcontractor.

Article 16, section 37, of the Constitution provides: "Mechanics, artisans and materialmen of every class shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon or material furnished therefor, and the Legislature shall provide by law for the speedy and efficient enforcement of said liens." In obedience to the Constitution, the Legislature enacted article 3296 and article 3308 to enforce liens of the class of materialmen to which McAdams belonged. Article 3296, so far as it affects the question before us, is as follows:

"Any person, firm or corporation who may furnish any material to any contractor, subcontractor, agent, or receiver, to be used in the erection of any house, building, or improvement, or to repair any house, building, or improvement, * * * by giving written notice to the owner or his agent of such house, building, or improvement * * * of each and every item furnished, and by showing how much there is due and unpaid on each bill of lumber for material furnished by said lumberman, corporation or materialman under said contract, at any time within ninety days after the indebtedness shall have accrued, may fix and secure the lien provided for in this chapter as to the material fur-

nished at the time or subsequent to the giving of the written notice above provided for, by filing in the office of the county clerk of the county in which such property is situated * * * an itemized account of his or their claim, as provided in this article, and cause the same to be recorded in a book kept by the county clerk for that purpose; provided that in no case shall the owner be compelled to pay a greater sum for [or] on account of labor performed or material, machinery, fixtures, and tools furnished as provided in this chapter, than the price or sum stipulated in the original contract between such owner and the original contractor or builder of such house, building, fixtures, improvements, or repairs." The foregoing article is substantially the same as section 3 of the Act of 1889, in force at the time, the rights involved accrued.

It will be observed that the law requires all who may furnish material to any person other than the owner to notify the latter of the character and value of the material so furnished so that he may protect himself by reserving out of the price to be paid by him the value of material placed into such improvement. In furtherance of this purpose, the Legislature also enacted article 3308, Revised Statutes, in the following language: "In all cases when a lien shall be filed under a provision of this chapter, by any person other than the original contractor or builder, it shall be the duty of the original contractor to defend any action brought thereupon, at his own expense, and during the pending of such action, the owner may withhold from the contractor or builder the amount of money for which such lien shall be filed, and in case of judgment against the owner or his property upon the lien, he shall be entitled to deduct from any amount due by him to the contractor the amount of said judgment and costs, and if he shall have settled with the contractor or builder in full, he shall be entitled to recover back from the contractor any amount so paid by the owner for which the contractor or builder was originally the party liable. But no owner or proprietor shall in any case be required to pay, nor his property be liable for any money that he may have paid to the contractor before the fixing of the lien or before he has received written notice of the existence of the debt, and all subcontractors, laborers, and materialmen shall have preference over other creditors of the principal contractor or builder; provided further, a copy of each bill of lumber furnished to the contractor or builder, as the same is furnished, shall be delivered to the owner of said homestead, said bill specifying each item so furnished, how much is paid thereon, and what is due for lumber or material furnished for said contract prior thereto; provided, when the debt is paid under the contract for such building or improvements, the party for whose interest the contract was recorded shall enter a relinquishment showing a full compliance of said contract to the extent of all money due them from the original contractor or builder on account of labor done or material furnished, and the money due said original contractor or builder from the person owning or having improvements made shall not be garnished by other creditors to the prejudice of

such subcontractors, mechanics, laborers, or materialmen." The practical effect of article 3296 in connection with the article last quoted is to garnish so much of the sum due from the owner of the building as may be necessary to pay for material furnished; but, for the protection of the owner, he and his property are exempted from liability for such claims unless written notice be given before he pays the contractor. The object was to give full opportunity to the materialman to assert and enforce his claim in such manner as to appropriate to himself the benefit of the contract made between the owner and the original contractor, but, in doing so, he must have due regard to the rights of the former, giving due notice of the claim, as the law directs.

Appellee insists that the notice required by the statute is for the benefit of the owner of the property improved, and that actual knowledge by Housewright, Swayze & Co. was a sufficient compliance with the law. The language, "But no owner or proprietor shall in any case be required to pay, nor his property be liable for any money that he may have paid to the contractor before the fixing of the lien or before he has received *written* notice of the existence of the debt," is so explicit that the court can not construe it to mean something less. The policy of the law is to relieve the owner from demands upon the ground of actual knowledge and constructive notice, because he could rarely defend himself from such claims. Written notice is certain and definite information upon which the owner must act. McAdams did not fix his lien nor give the written notice before payment was made by Housewright, Swayze & Co. to Berry, the contractor, and is not entitled to enforce a lien upon their property for material furnished to a subcontractor.

The appellant claims that the Constitution gives no lien to persons who do not contract with the owner of the property. On the other hand, it is insisted by appellee that a lien is given by the Constitution in favor of all classes of materialmen and laborers which attaches independently of any statutory provisions. That question was decided, as to claims of subcontractors, in Horan v. Frank, 51 Texas, 401, with which there is apparent conflict in the utterances of later cases; but it is not necessary for us to decide the question. Assuming, however, for the purposes of this case, that the Constitution does give a lien in favor of the class of persons to which the appellee belongs, it, at the same time, requires of the Legislature to enact laws for the enforcement of such lien, which has been done, and we hold that the laws above referred to are within the powers of the Legislature over the subject, and that a failure by the appellee to comply with their requirements defeats his lien claimed under the Constitution. In other words, it is a reasonable and just regulation for the *efficient* enforcement of the lien of the materialman which he must comply with in order to avail himself of the benefit of the provisions of the Constitution. There being valid laws upon the subject, the question what would be appellees' rights if there were no such statute can not arise.

JOHN FARMER, COUNTY TREASURER, v. W. N. SHAW.

No. 883. Decided March 22, 1900.

1. County Judge—Commissioners Court—Compensation.

Articles 2450 and 2466, Revised Statutes, are not necessarily inconsistent, and an allowance by the commissioners court of an annual salary of $1500 to the county judge, under the former article, for presiding over that court and other official business, will not prevent him from drawing also the compensation of $3 per day allowed by .the latter article for sitting as a member of such court. (Pp. 443-445.)

2. Same—Statutory Construction—History of Enactment.

Where the meaning of a statute is doubtful it is proper to recur to the history of the enactment in order to throw light on its construction and ascertain the intent of the Legislature. (P. 444.)

3. Same—Statutes Construed.

Reviewing the history of the enactments culminating in the present Revised Statutes, articles 2450 and 2466 (Revised Statutes, 1879, articles 2386, 2402; Act August 23, 1876, sections 6 and 14), held, that the purpose was to provide by article 2450 that the county judge should receive at least as much as a commissioner, while sitting as a member of that court; and by article 2466 that the court might allow him further compensation, as a part of his general salary, for incidental services. (Pp. 443-445.)

QUESTIONS CERTIFIED from the Court of Civil Appeals for the Third District, in an appeal from Harris County.

*S. E. Tracy, T. S. Smith, R. H. Ward,* and *T. S. Reese,* for appellant.—Appellee having been allowed the sum of $1500 per year, as county judge, by the Commissioners Court of Harris County, by orders duly made and entered in the minutes of said court, "for presiding over the Commissioners Court, ordering elections and making returns thereof, hearing and determining civil causes, and transacting all other official business not otherwise provided for," in accordance with article 2450 of the Revised Statutes, he was not entitled to receive in addition thereto pay for presiding over the Commissioners Court at the rate of $3 for each day in accordance with article 2466; the warrant upon which the suit was based being issued to him for his services under said article. Sec. 18, art. 5, Constitution of 1876; sec. 15, art. 5, Constitution of 1876; Acts of 1876, pp. 286, 292; Acts of 1879, pp. 90-93; articles 2386, 2402, Rev. Stats., 1879; articles 2450, 2466, Rev. Stats., 1895.

Articles 2450 and 2466, Revised Statutes of 1895, being in irreconcilable conflict with each other as to the compensation of a county judge as to services for presiding over the commissioners court, it is permissible to resort to the original statute from which said two articles were taken, which is an act entitled "An Act to fix and regulate the fees of all the officers of the State of Texas, and of the several counties thereof," approved August 23, 1876 (see Acts 1876, pages 284 to 294), for the purpose of ascertaining the intent of the Legislature in determining whether those portions of said two articles of the Revised Statutes above

cited which conflict with each other were not inserted in the Revised Statutes by the codifiers by inadvertence or mistake. Said Act of 1876 shows that the Legislature intended to give a county judge his salary for compensation for presiding over the commissioners court, and only intended to give the other members of the commissioners court per diem compensation; said act controls said two articles of the Revised Statutes, and removes the conflict, and deprives the county judge of any right to a per diem compensation under article 2466. Sec. 18, art. 5, Constitution of 1876; sec. 15, art. 5, Constitution of 1876; secs. 6, 14, Acts of 1876, pp. 286, 292; Acts of 1879, pp. 90, 91, 92, 93; Arts. 2386, 2402, Rev. Stats., 1879; Art. 2450 (2386), Rev. Stats., 1895; Art. 2466 (2402), Rev. Stats., 1895; Black on Interp. of Laws, 368, 369; Endlich on Interp. of Laws, secs. 40, 202; Braun v. State, 49 S. W. Rep., 622; Nicholson v. Railway, 49 Ala., 205; Pratt v. Street Coms., 139 Mass., 563; Ex Parte Ray & Defoe, 45 Ala., 19; United States v. Bowen, 100 U. S., 513; Myer v. Car Co., 102 U. S., 11; Victor v. Arthur, 104 U. S., 499. The following authorities bear directly upon the proper construction of a revision of the laws: St. Louis v. Alexander, 23 Mo., 509; City of Cape Girardeau v. Riley, 52 Mo., 428; Stafford v. Creditors, 11 La. Ann., 470; Wright v. Oakley, 5 Metc., 406; Groetz v. McKinzie, 3 Wash., 194, 225; Mobile Savings Bank v. Patty, 16 Fed. Rep., 751.

Section 18 of article 5 of the Constitution of 1876 reads: "Each county shall in like manner be divided into four commissioners' precincts, in each of which there shall be elected by the qualified voters thereof one county commissioner, who shall hold his office for two years. * * * The county commissioners so chosen, with the county judge as presiding officer, shall compose the county commissioners court."

There can be under this constitutional provision but four county commissioners, one for each commissioner's precinct. These commissioners are elected and act for their respective precincts. The Constitution nowhere provides for or recognizes more than four county commissioners. The constitutional provision above says that "the county commissioners so chosen, with the county judge as presiding officer, shall compose the county commissioners court." We think that this plainly means that this court can only consist of the commissioners "so chosen," that is, the four commissioners, one elected for each precinct. That the commissioners court can only be composed of the four commissioners, but the county judge presides over the court. That court is composed of four commissioners, but the county judge is presiding officer. That the county judge is not and can not be a county commissioner, but is presiding officer of the court, consisting of but four commissioners. That the county judge does not preside over the court as a county commissioner, nor participate in its business or deliberations as a county commissioner, but does so by virtue of being county judge, and as such the presiding officer of the court. Article 2450 reads as follows: "For presiding over the commissioners court, ordering elec-