FIRST BAPTIST CHURCH OF TYLER et al. v. CARLTON LUMBER CO. †
(No. 1363.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 26, 1915. Rehearing Denied March 4, 1915.)

1. MECHANICS' LIENS ☞132 — MATERIALS — ABANDONMENT BY CONTRACTOR — TIME FOR FILING NOTICE.

Under Rev. St. 1911, art. 5623, providing that one furnishing material to a contractor for the construction of a building may acquire a lien therefor by giving written notice to the owner, showing the items furnished, or by filing a notice of lien with the county clerk within the time fixed, but in no case shall the owner be required to pay a greater sum than the contract price, one who furnished material to a contractor, but who had not fixed his lien before the contractor abandoned the contract at a time when he had been paid in full for all work done, cannot claim a lien.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 190, 192–207; Dec. Dig. ☞132.]

2. MECHANICS' LIENS ☞108—CONSTITUTIONAL PROVISIONS—CONSTRUCTION—MATERIALMEN.

Const. art. 16, § 37, giving mechanics and materialmen a lien upon a building for the value of their labor or materials, does not give a person between whom and the owner there is no privity of contract a lien upon the property for labor or materials furnished to the principal contractor.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 140, 141; Dec. Dig. ☞108.]

Appeal from District Court, Smith County; R. W. Simpson, Judge.

Action by the Carlton Lumber Company

against the First Baptist Church of Tyler, Tex., and others, to foreclose a mechanic's lien. Judgment was rendered personally for the plaintiff against the contractor and for foreclosure of a lien against the building. From that part of the judgment decreeing the foreclosure, the defendants appeal. Reversed, and rendered for defendants.

The suit was by appellee against appellants for foreclosure of a mechanic's lien in the sum of $2,789.93. It appears that the First Baptist Church of Tyler entered into a written contract with the McGavick Construction Company for the erection and completion of a brick and concrete church building, and to provide all materials and perform all work mentioned in the drawings and specifications prepared by an architect, including heating, plumbing, and electric wiring complete. The contract was dated September 26, 1911. The church was to pay the contractor the fixed sum of $39,950.85 for the whole of the work and the materials. By the terms of the contract payments out of the contract price were to be made the contractor, on written certificate of the architect, every 30 days during the progress of construction, not to exceed 80 per cent. of the labor performed and material placed in the building at the time of such estimates; the final payment to be made within 30 days after the contract was fulfilled. Article 5 of the contract provided, in effect, that if the contractor at any time during the progress of the work should neglect or refuse to supply a sufficiency of materials or properly skilled workmen, or should fail to prosecute the work with promptness and diligence, and the architect certified such failure, the church should have the right, after 3 days' notice in writing to the contractor, to terminate the employment of the contractor for the work, and to employ other persons to finish the work and provide the materials therefor, and that the expense should be deducted from the contract price. The entire contract in writing appears in the record, and is here made a part of the findings of fact. The construction company gave to the church a bond executed by the Western Casualty & Guaranty Insurance Company, conditioned that the construction company would faithfully comply with the terms and conditions of its contract. The construction company entered upon the performance of the contract and erected the greater part of the church building. Up to October 2, 1912, there had been paid out to the contractor by the church for labor and material that had gone into the building a sum in the amount of $31,000. At that date, with extras added, the contract price amounted to $41,585.60. On October 2, 1912, on estimate of the architect the church paid the contractor $420.57. On October 12th, on estimate of the architect, the contractor was paid $1,142.72. Through inability of the contractor to fur-

ther finance the work, the church committee, on October 24, 1912, advanced to the contractor, by consent of the bonding company, $3,000 of the contract price, to be applied to labor and material for the completion of the building. Prior to advancing this sum the architect, at the request of the contractor and the church committee, went over the work done in detail and made estimate of the amount of the contract price unpaid and the cost required to complete the building. The estimate of the architect was that it would take $9,582.30 to complete the work under the contract, which amount included "the balance due on the heating plant" and "the amount due the Carlton Lumber Company, and further bills unpaid." It was estimated that there was approximately $10,000 of the contract price unpaid, inclusive of the balance due on the heating plant. On December 10, 1912, because of inability to finance the work, the contractor entirely ceased work on the building, and, in point of fact, abandoned the work and the contract. The day the contractor ceased to work and abandoned the contract the church, on the architect's estimate, paid the contractor $294.60. The architect made estimate that it would take $6,600 to complete the building and pay the bills, and that only $6,661.15 of the contract price was then unpaid. At the time the contractor abandoned the work there was nothing due him by the church. After the abandonment of the work and the breach of the contract the church committee entered into and made on December 16, 1912, a distinct written contract with the Western Casualty & Guaranty Insurance Company to finish and complete the building for the sum of $6,661.15. The insurance company entered upon the work and completed the building, and the church committee paid to it the sum of money it had contracted to pay.

On October 2, 1912, the construction company gave the following written order to the chairman of the building committee of the church:

"You will please pay Carlton Lumber Co. ($2,775.55) twenty-seven hundred seventy-five and $55/100$ dollars, amount due them for material on church job.
    "McGavick Construction Company,
        "Per P. J. McGavick."

The order was at once presented, but the church committee did not accept or agree to pay it, and at the time there was nothing due to the construction company. Afterwards the appellee lumber company filed in the county clerk's office on December 16, 1912, a mechanic's lien for the amount of $2,789.93. Notice of the claim and lien was properly given to the church by the lumber company.

The court, with the assistance of the jury verdict, rendered personal judgment against the construction company for the full amount of the claim, and against the church, with foreclosure of mechanic's lien, for $1,429.89. The church on its indemnity contract with

the bonding company was awarded judgment over and against such bonding company for the amount recovered by appellee against it.

Fitzgerald, Butler & Bulloch, of Tyler, for appellants. Lasseter & McIlwaine and N. A. Gentry, all of Tyler, for appellee.

LEVY, J. (after stating the facts as above). [1] The appellants each requested a peremptory instruction to the jury in their favor, which was refused by the court, and this action is here assigned as error. The appellee may only recover, if at all, it is thought, upon the ground that it has a mechanic's lien. In this respect it appears undisputed that the McGavick Construction Company, in point of fact, abandoned the work and breached the contract at a time when the building was incomplete, and the church committee, accepting the breach, and acting independently of the contract, made a distinct contract reletting the work to the appellant insurance company for a stated and fixed price. At the time of the abandonment of the contract the original contractor had been paid in full, and appellee had not fixed a mechanic's lien until after the contract had been relet to appellant insurance company. In these facts it is believed that no recovery could be had or statutory lien enforced against the church or the subsequent contractor. Article 5623, R. S.; Berry v. McAdams, 93 Tex. 431, 55 S. W. 1112; Medley v. Radiator Co., 27 Tex. Civ. App. 384, 66 S. W. 86; Riter v. Mfg. Co., 19 Tex. Civ. App. 516, 48 S. W. 758.

[2] And, unless it can be said, as contended by appellee, that it has a lien under the terms of the Constitution, independent of the statute, the peremptory instruction should have been given. Under the facts appellee was not itself the contractor with the owner of the building, but merely furnished to the contractor, under a contract separately and distinctly with the contractor so to do, the lumber and material for which the lien is claimed. The owner was no party to the contract of appellee with such contractor. The pertinent provision of the Constitution reads:

"Mechanics, artisans and materialmen, of every class, shall have a lien upon the buildings and articles made or repaired by them, for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens." Article 16, § 37.

It is concluded that the terms of the constitutional provision may fix and establish a lien on the property in favor of the principal contractor himself for the value of the material put in the building "by him," but does not extend and give to other persons between whom and the owner there is no privity of contract a lien upon the property for the value of the material furnished by them to the principal contractor. Shields v. Mor-

row, 51 Tex. 393; Horan v. Frank, 51 Tex. 401.

The judgment is reversed, and here rendered in favor of appellants, with costs of appeal and of the district court. The judgment against the construction company, not being appealed from, will remain undisturbed.