**TEXAS & NORTHERN RAILWAY COMPANY, Appellant,**

v.

**L. B. LOGWOOD, d/b/a Logwood Sand and Gravel Company, Inc., Appellee.**

No. 7703.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 22, 1966.

Robert F. Salmon, Linden, Spencer C. Relyea, III, Burford, Ryburn & Ford, Dallas, for appellant.

Carney & Mays, Atlanta, for appellee.

FANNING, Justice.

Plaintiff-appellee Logwood sued Travis Bechtold and appellant railway company, seeking a personal judgment against both defendants for $2623.16 for ready mixed concrete sold to Bechtold, for interest, attorneys' fees and costs of suit, and plaintiff-appellee also sought to foreclose a mechanic's and materialman's lien on property belonging to appellant railway company. On trial, plaintiff-appellee dismissed his suit against Bechtold. Trial was to the court without the aid of a jury. The trial court entered judgment for plaintiff foreclosing his alleged lien against appellant's property, with interest and costs; however the trial court did not render a personal judgment against appellant and did not render any judgment against appellant for attorney's fees. Appellant railway company has appealed.

In late August or early September, 1963, appellant railway company entered into an

oral contract with Bechtold to tear out old floors of two buildings owned by appellant and to install new concrete floors. Bechtold was a cement contractor who had his own equipment and employees, and he agreed to furnish all labor and material to do the job on a "turn-key" basis for the sum of $8600.00, except that appellant would furnish the necessary reinforcing bars. Bechtold started the job soon after the contract was made and finally completed the job on September 17, 1963. He performed the work satisfactorily and appellant paid Bechtold for the job in three checks, the first dated September 4, 1963, the second dated September 12, 1963, for $900.00, and the third and final check dated September 18, 1963, for the balance of $6,-161.18. The discrepancy between the total amount paid and the turn-key price of $8,-600.00 was caused by the appellant's furnishing crushed slag of $38.82, which amount was deducted from the original contract price.

After the contract between Bechtold and appellant was made, Bechtold contacted Logwood and made a sub-contract with him for ready-mixed concrete to be delivered to the job site at a fixed price per yard. From time to time during the construction period plaintiff made deliveries of ready mixed concrete to the job site, and on these occasions he or his agents would have someone sign a copy of the delivery tickets. Plaintiff did not identify what persons signed the tickets, nor whether they worked for plaintiff Bechtold or someone else, however Bechtold testified to the effect that all of the tickets were signed by him personally or by his employees.

When the job was finally completed on Sept. 17, 1963, plaintiff-appellee submitted his bill for the ready-mixed concrete to Bechtold, but the same was never paid.

On October 19, 1963, which was more than 30 days after the job was completed on Sept. 17, 1963, the plaintiff-appellee sent to appellant a statement, which was addressed to Bechtold at Dallas, Texas, which set forth Sept. Balance Due: $2,623.16, and which contained a notation to the effect that a statement had been mailed to Bechtold at Longview, Texas, on Sept. 17, 1963 (Bechtold was located at Longview at the time of the original contract).

Sometime in October, 1963, plaintiff-appellee telephoned the president of appellant railway company and a conversation was had about payment of plaintiff's bill. The parties are at variance as to the conversation, but, whatever the conversation was, appellant made no payment. On Nov. 27, 1963, plaintiff-appellee filed a materialman's lien affidavit in the county where appellant's property was located, in which he swore to the effect that he furnished concrete of a value of $2,723.16 to "Travis Bechtold or Travis Bechtold Cement Company", a contractor or builder, and in said lien affidavit described certain property of appellant railway company which included the property upon which the ready-mixed cement was placed.

In 1961, chapter two of Title 90, (being articles 5452 through 5472c) Revised Civil Statutes of Texas was amended. The new Title is Chapter 382, and amends Articles 5452, 5453, 5454, 5455, 5456, 5463, 5467, 5468, 5469 and 5472d. In this connection, see an article by Ralph D. Baker, "The New Mechanics' Materialmen's Lien Law", 26 Texas Bar Journal, December, 1963, p. 1009.

Art. 5453, V.A.C.S., provides the method of fixing the mechanic's and materialmen's lien granted in Article 5452, V.A.C.S. In order to perfect a lien, original contractors, within one hundred and twenty days after the accrual of indebtedness, and subcontractors within 90 days, are required to file with the county clerk of the county in which the work was performed setting forth the nature of their claims and the property against which the lien is sought. Art. 5453 imposes an additional requirement applicable to anyone not an original con-

tractor—that of notice. Pertinent portions of said article are quoted below.[1] Article 5463 is also quoted below.[2] Article 5469 is also quoted below.[3]

1. "Art. 5453 (5622-3) Securing lien

"The lien provided for in Article 5452 may be fixed and secured in the following manner: * * *

"2. If the claimant for such lien is other than an original contractor, such claim shall not be valid or enforceable unless the claimant shall also have complied with the applicable notice requirements hereafter set forth which shall be conditions precedent to the validity of such claims:
   *     *     *     *     *

"b. Excepting instances of retainages for which notices have been given in accordance with the preceding subparagraph, the claimant shall give the applicable notice or notices described, as follows:
   *     *     *     *     *

"(2) Where the claim consists of a lien claim arising from a debt incurred by the original contractor, no such notice need be given to the contractor but notice to the owner, as prescribed in paragraph 2b(1) of this Article will be sufficient.

"Such notices shall be sent by certified or registered mail, addressed to the owner, and where required by this Article to the original contractor, at their last known business or residence address. A copy of the statement or billing in the usual and customary form shall suffice as a notice under this subparagraph; provided, however, if such statement or billing is to be effective to authorize an owner to retain funds for the payment of such claim as provided in Article 5463 of this Act, it shall contain or be accompanied by some form of statement to an owner to the effect that if the bill remains unpaid he may be personally liable and his property subjected to a lien unless he withholds payments from the contractor for the payment of such statement or unless the bill is otherwise paid or settled.
   *     *     *     *     *

"3. A claimant desiring to demand payment of his claim by the owner may accompany his notice of such claim with the demand for payment as prescribed by Article 5454. As amended Acts 1961, 57th Leg., p. 863, ch. 382, § 2."

2. "Art. 5463. (5635) (3308) Owner authorized to retain funds, contractor to defend suits

"1. When notices of claims sent under the provisions of paragraph 2 of Article 5453 of this Act are received by the owner, he shall be authorized to retain in his hands the amount or amounts of money necessary to pay said claims from payments or part-payments to the original contractor for labor, or material or both, or for specially fabricated materials which has been performed or furnished by a claimant and to which such notices are applicable, at times and under circumstances, as follows:

"a. Under notices of claims sent under subparagraph 2-a of Article 5453, immediately upon receipt of a copy of the claimant's affidavit claiming a lien prepared by claimant pursuant to said notices are required by paragraph 1, of Article 5453.

"b. Under notices of claims sent under subparagraph 2-b of Article 5453, immediately upon receipt of such notices.

"c. Under notices of claims sent under subparagraph 2-c of Article 5453, immediately upon receipt of the additional notices under subparagraph 2-b of said Article which are required to be sent upon delivery, or if and when the normal delivery time on the job has passed. Such funds shall be retained, unless payment is made under Article 5454, or the claim otherwise settled or determined, until the time for securing a lien under this Act has passed; or if a lien affidavit has been filed, until the lien claim has been satisfied and released.

"2. When an affidavit claiming a lien is filed by any one other than the original contractor under the provisions of this Act, the original contractor shall defend the action brought thereupon at his own expense. In case of judgment against the owner or his property upon the lien, he shall be entitled to deduct from the amount due the contractor the amount of said judgment and costs; and, if he shall have settled with the contractor in full, he shall be entitled to recover from the contractor any amount so paid for which the contractor was originally liable. *The owner shall in no case be required to pay, nor his property be liable for, any money, other than that required to be retained by him under the provisions of Article 5469 hereof, that he may have paid to the contractor before he is authorized under this Article to retain the money.* If the notices prescribed in Article 5453 have been received by the owner and claimant's lien has been secured in accordance with Article 5453 and the claim

3. See note 3 on page 889.

In 38 Tex.Jur.2d, Mechanics' Liens, Section 45, p. 600–2, it is stated:

"§ 45. Liability of owner;

"It has been held that, though in a proper case the lien statutes subject the property of the owner to the lien of claimants for improvements on the property, the statutes do not create a personal liability on the owner's part—that is, the proceeding to fix the lien does not create a debt against the owner unless he has incurred personal liability by paying money to the contractor after receiving notice of the claim. In this connection, where a statement or billing is sent to the owner, as notice of a lien claim arising from a debt incurred by a contractor, if the statement or billing is to be effective to authorize the owner to retain funds for the payment of the claim as provided by statute, it must contain or be accompanied by some form of statement to the owner to the effect that if the bill remains unpaid he may be personally liable and his property subjected to a lien unless he withholds payments from the contractor for the payment of the statement or unless the bill is otherwise paid or settled. It is further provided that the owner shall in no case be required to pay, nor his property be liable for, any money, other than that required to be retained by him under the statutory provisions, that he may have paid to the contractor before he was authorized to retain the money. If the notices of lien claimants have been received by the owner and claimant's lien has been secured in accordance with the applicable statute and the claim or any part thereof is reduced to final judgment, the owner is required to pay, and his property is to be liable for, any money that he may have paid to the contractor after he was authorized to retain the amount of money necessary to pay claims from payments to the original contractor.

or any part thereof is reduced to final judgment, the owner shall be required to pay, and his property shall be liable for, any money that he may have paid to the contractor after he is authorized to retain such money by virtue of this Article, as well as any money he is required to retain by the provisions of Article 5469 hereof. As amended Acts 1961, 57th Leg., p. 863, ch. 382, § 6." (Emphasis added.)

3. "Art. 5469 (5638) Lien claimants fund with reference to mechanics
"Whenever work is done whereby a lien or liens may be claimed under Article 5452 hereof, it shall be the duty of the owner, his agent, trustee, or receiver to retain in his hands during the progress of such work *and for thirty (30) days after the work is completed,* to secure the payment of artisans and mechanics who perform labor or service, and to secure the payment of any other claimants furnishing material, or material and labor, or specially fabricated material for any contractor, subcontractor, agent, or receiver in the performance of such work ten per cent (10%) of the contract price to the owner, his agent, trustee, or receiver of such work, or ten per cent (10%) of the value of same, measured by the proportion that the work done bears to the work to be done, using the contract price or, if none, the reasonable value of the completed work as a basis of computing value. *All persons who shall send notices in the time and manner required by this Act and shall file affidavits claiming a lien not later than thirty (30) days after the work is completed shall have a lien upon the fund so retained by the owner, his agent, trustee, or receiver;* with preference to artisans and mechanics, who shall share ratably therein to the extent of their claims; with any remaining balance to be shared ratably among all other participating claimants. If the owner, his agent, trustee, or receiver refuses or fails to comply with the provisions of this Article, then all claimants complying with the provisions of this Act shall share ratably among themselves, with preference to artisans and mechanics as above specified, liens at least to the extent of the aforesaid fund of ten per cent (10%) which should have been retained, as against the house, building, structure, fixture, or improvement and all of its properties, and on the lot or lots of land necessarily connected therewith, to secure payment of such liens. As amended Acts 1961, 57th Leg., p. 863, ch. 382, § 9." (Emphasis added.)

"It has been held that except insofar as he is restrained by the statutes that require him to retain a specified percentage of the contract price, and to withhold sufficient money to pay claims of which he has notice, the owner may pay the contractor the amount due him under the contract, trusting the contractor to pay his own employees."

Under the contract between appellant railway company and Bechtold there were no provisions for retainage and the railway company paid Bechtold in full when the contract was completed. Appellee's notice of Oct. 19, 1963, to appellant was not couched in the statutory language requiring appellant to withhold retainage and was also given after the job in question was completed and after Bechtold had been fully paid for the job by appellant railway. Also, the delivery tickets in question were not couched in terms to constitute statutory notice and are wholly deficient to constitute statutory notice. Appellee's lien affidavit was also filed more than thirty days after the job was completed and Bechtold was fully paid. While appellant under the terms of Art. 5469, V.A.C.S., should have retained 10% of the contract price, etc., for a period of thirty days after the completion of the job under the formula described in said statute, nevertheless the failure of appellant to retain said 10% for a period of thirty days after the completion of the job would not result in the appellant becoming liable for the amount of the 10% retainage, because appellee's lien was not filed until Nov. 27, 1963, which was more than thirty days after the completion of the job.

Under the facts in this case, appellant was not liable to appellee in any amount and appellee did not have a valid lien in any amount against the property of appellant. In this connection see the following authorities: Berry v. McAdams, 93 Tex. 431, 55 S.W. 1112 (1900); Eldridge v. Poirer, Tex.Civ.App., 50 S.W.2d 888, writ refused (1932); Henderson v. Couch, Tex. Civ.App., 274 S.W.2d 844, no writ (1955);

Texas State Bank of Alice v. Baker, Tex. Civ.App., 275 S.W.2d 168, no writ (1955); Marek v. Goyen, Tex.Civ.App., 346 S.W.2d 926, no writ (1961).

In Berry v. McAdams supra (55 S.W. 1112) it was stated in part as follows:

" * * * The validity of McAdams' lien against the property of Housewright, Swayze & Co. depends upon his compliance with the requirements of the statutes enacted in pursuant of the constitution of this state. From the statement, it appears that McAdams did not give written notice of his claim for material furnished to Housewright, Swayze & Co. before they had paid to Berry the amount due him under the contract for building the house, and, by the terms of article 3308, Rev.St., Housewright, Swayze & Co. were not liable to McAdams for the material furnished to the subcontractor. * * *

"Appellee insists that the notice required by the statute is for the benefit of the owner of the property improved, and that actual knowledge by Housewright, Swayze & Co. was a sufficient compliance with the law. The language, 'but no owner or proprietor shall in any case be required to pay, nor his property be liable for, any money that he may have paid to the contractor before the fixing of the lien or before he has received written notice of the existence of the debt,' is so explicit that the court cannot construe it to mean something less. The policy of the law is to relieve the owner from demands upon the ground of actual knowledge and constructive notice, because he could rarely defend himself from such claims. Written notice is certain and definite information upon which the owner must act. McAdams did not fix his lien nor give the written notice before payment was made by Housewright, Swayze & Co. to Berry, the contractor, and is not entitled to enforce a lien upon their property for material furnished to a subcontractor."

Appellee has filed a cross-point on appeal contending that the trial court erred in not awarding to plaintiff a personal judgment against appellee and also a judgment for attorney's fees as prayed for. This cross-point is overruled.

The judgment of the trial court insofar as it denies a personal judgment to appellee and denies attorney's fees to appellee is affirmed; the judgment of the trial court in all other respects is reversed and judgment is rendered that appellee take nothing from appellant.

Affirmed in part and reversed and rendered in part.