**Moton H. CROCKETT, Jr., Appellant,**

**v.**

**George T. BRADY, dba Brady Air Conditioning, Appellee.**

**No. 11745.**

Court of Civil Appeals of Texas, Austin.

June 17, 1970.

Joseph Latting, Coleman Gay, Austin, for appellant.

T. O. Dillard, Austin, for appellee.

HUGHES, Justice.

George T. Brady, dba Brady Air Conditioning sued Moton H. Crockett, Jr. upon a sworn account in the sum of $1,948.14. In the alternative, Brady sued in quantum meruit alleging "that in the event he is mistaken or in the event Moton H. Crockett, Jr. did not promise to pay him the various amounts set forth in the preceding paragraphs, that the Defendant Moton H. Crockett, Jr., or his duly authorized servants and agents with full knowledge and consent, received the benefits of such goods, wares and merchandise furnished by the Plaintiff, and said Defendant accordingly by implication agreed to pay the Plaintiff the reasonable value for his said

materials, services and merchandise" alleged to be $1,948.14. Attorney's fees were also sought.

Trial to the Court, without a jury, resulted in judgment on the quantum meruit pleading for Brady in the sum of $1,948.14, plus $1,000.00 attorney's fees.

Appellant's first three points are to the effect that recovery on the theory of quantum meruit was erroneous for the reason that the goods and services furnished by Brady were furnished to a general contractor under a contract between Brady and such contractor, and there was no evidence that Brady looked to appellant for payment therefor, the evidence conclusively showing that appellant had paid the general contractor for such goods and services.

We sustain these points.

Mr. Crockett entered into a written contract with Joe Friedman wherein Friedman agreed to furnish all material and perform all the work for the construction of a building called DeGress Motors Showroom according to drawings and specifications for a lump sum of money. There is no evidence that Friedman was other than an independent contractor.

We quote from the testimony of Mr. Brady:

"Q  Mr. Brady, calling your memory back to the months of June and July, 1965, or sometime prior to that as a matter of fact, did you enter into some kind of arrangement with a man by the name of Joe Friedman, who was constructing the DeGress Motors Building?

A  We accepted a contract from Joe Friedman on January 16, 1965, to air-condition a building later known as DeGress Motors, 3700 North Lamar, in the amount of $2,889."

We quote the testimony of Mr. Crockett:

"Q  Mr. Crockett, did you ever agree to pay Mr. Brady for air conditioning, or any part of it?

A  No, sir.

Q  Whom did you agree to pay for this building?

A  I agreed to pay Mr. Friedman under a fixed contract.

Q  Have you paid him all that you owed him on it?

A  Yes, sir."

This testimony is undisputed.

In Crockett v. Sampson, Tex.Civ.App., 439 S.W.2d 355, no writ (1969) we stated the well settled rules applicable to a recovery on quantum meruit, as follows:

"Liability on quantum meruit is based on a contract implied in law. An essential prerequisite to such liability is the acceptance of benefits by the one sought to be charged, rendered under such circumstances as reasonably to notify him that the one performing such services expected to be paid therefor by him, the person sought to be charged. 98 C.J.S. Work and Labor § 8, p. 724, Wyche v. Perrin, 228 S.W.2d 330, Tex. Civ.App. Dallas, writ ref. n. r. e. (1950)."

The work which Mr. Brady agreed with Friedman to do was completed by July 28, 1965. It was not until November 8, 1965, that Mr. Crockett was notified by Mr. Brady that his bill was partially unpaid and that steps were being taken to establish a statutory lien on the property in question, Mr. Crockett being its owner.

It is undisputed, of course, that Mr. Crockett has received the benefit of the air conditioning furnished him by Brady. Mr. Crockett has paid for this air conditioning by paying Mr. Friedman as he was obligated by contract to do. Should appellee recover, Mr. Crockett will have paid for it twice.

We are at loss to find any evidence to support an implied and essential finding to the effect that Mr. Crockett in any manner or by any words or conduct of his gave Brady any reason to believe that he

would pay for the air conditioning furnished by Brady under his contract with Friedman.

We will recite the substance of the testimony upon which Brady attempts to sustain the judgment of the Trial Court.

Appellee invoiced Mr. Friedman on July 1, 1965, in the amount of One Thousand Eight Hundred Fifty-nine Dollars and 40/100 ($1,859.40). At this point in time, Mr. Crockett testified that the job was in trouble; that he had paid Mr. Max Warren for some work done on the job and further stated, "On the date when I took this thing over to do some work on the job, I couldn't tell you how much it would cost to complete that job." Mr. Crockett also testified that he had paid $50,000.00, and was due to retain something like $6,000.00 and that the building could have been finished as of June 14, 1965, for only four thousand dollars more. Appellant further testified that at the time appellee did the last work on the air conditioning system, he was doing some work out there. On June 14, 1965, the architect's certificate shows that appellee still had Five Thousand Six Hundred Nineteen Dollars and 37/100 ($5,619.37) in retainage and that he did not have but four thousand dollars more to spend before the building was completed.

Mr. Brady entered into a contract with one Joe Friedman on January 16, 1965, to air condition the DeGress Motors building in Austin for the sum of Two Thousand Eight Hundred Eighty-nine Dollars ($2,-889.00). Mr. Brady testified that he refused to approve the account based on Friedman's credit, but then he received specifications which, out of the office of Lundgren and Maurer, architects, called for the job to be bonded by an insurance company of one million dollars or more of net worth.

Under these facts, Mr. Brady makes this argument in his brief:

"Appellee would further respectfully point out to the Court that certificate for payment #6 which shows on its face that it was paid on June 14th, 1965, showed that there was at least Nine Hundred Twenty Dollars ($920.00) more to be paid to Appellee for heating and air conditioning. At this point in time Appellant had actual knowledge that Appellee had not been paid in full and since he took over the operation shortly thereafter, he must have known that Appellee would look to him for payment rather than the general contractor who was no longer running the job."

The certificate referred to was by the architects on the job and certified the amount, in dollars, of completed work for which payment was proper, and it stated the amount of the work not completed. As to air conditioning it showed $3,080.00 completed work and $920.00 uncompleted. The certificate was addressed to Mr. Crockett and it certified that the payment indicated "is now due Joe Friedman, Contractor."

There is nothing in this document to advise Mr. Crockett that he should pay Brady rather than the contractor.

Mr. Crockett testified that he did not "take over" the job although he paid Mr. Max Warren for some minor work to complete the building.

Mr. Crockett also testified that, "I don't believe anyone ever ran Mr. Friedman off the job. He was allowed to do what work he could to help finish the job."

The record shows that Brady pleaded that Richard D. Hodges had executed a bond whereby he agreed to pay all sums that might become due and payable for labor or materials furnished Friedman in performance of the Crockett contract not to exceed $60,000.00. Mr. Hodges was made a party to this suit but the claim against him was severed by the Trial Court.

In Volume 16, Vernon's Annotated Texas Civil Statutes which contains statutes pertaining to mechanics and materialmen's liens there is a preamble by Edward Young Boynton styled Mechanic's Liens in Texas

wherein he states that " * * * the rights of sub-contractors are subject to certain limitations provided primarily for the protection of the owner of the real estate."

Brady is a subcontractor. He did not comply with the statutes relating to mechanics or materialmen's liens including the duty to properly notify the owner of the real estate regarding money retained by him under his contract with the contractor or under the statutes.

These statutes which are "primarily for the protection of the owner of the real estate" would be of no benefit to a solvent owner if a subcontractor can ignore them and still hold the owner personally liable for all bills for material and labor which are not paid by the original contractor who incurred them.

We hold, under the facts of this case, that there is no basis for holding Mr. Crockett liable to Brady under the theory of quantum meruit.

This ruling disposes of the case except as to an item for extras and services of $88.-74 which Brady furnished for and charged to Warren Contractors and which went into the building. Regarding this Mr. Crockett testified:

"Q Did you ever employ Mr. Warren on the job?

A No, sir, not on this job.

Q You paid him some money?

A Yes, sir.

Q Now, what was that for?

A That was for work that he was completing, some of Mr. Friedman's work that Mr. Warren was completing for the bondsman, as I understood it.

Q Anyway, was it money that you owed on the job?

A You say it was, or wasn't?

Q Was it?

A Yes, I guess it was money that was owed on the job."

The only theory of recovery pleaded and sustained by the Trial Court was quantum meruit. There is no evidence that Mr. Crockett did or said anything which would lead Mr. Brady to believe that he would pay for the extras furnished at the request of Mr. Warren and charged to him.

The judgment of the Trial Court is reversed and judgment is here rendered that appellee take nothing by his suit.

Reversed and rendered.