Carolina A. **LOPEZ** et al., Appellants,

v.

**BONDED CONSTRUCTION AND SUPPLY CO. D/B/A Factory Outlet Building Materials,** Appellee.

No. 6115.

Court of Civil Appeals of Texas, Waco.

Jan. 31, 1980.

Mark S. Levin and Hector Del Toro, Texas Rural Legal Aid, Inc., Alice, for appellants.

Clyde L. Wright, Jr., Alice, for appellee.

## OPINION

JAMES, Justice.

This case involves the construction of statutes relating to liens for mechanics and materialmen.

On July 26, 1976, Plaintiff-Appellants Carolina A. Lopez and Flavia L. Almaraz, Mrs. Lopez's mother, entered into a contract with one G. M. Rodriguez for the rehabilitation of their home. The rehabilitation effort was necessary to bring Appellants' home within Urban Renewal standards. The Urban Renewal Agency of Alice, Texas, administered for the Department of Housing and Urban Development a federally-subsidized, low-interest loan program for home owners such as Appellants, and the Agency had assisted Appellants in applying for such a loan. The Agency had also assisted the Appellants in formulating the plans and specifications for the rehabilitation so that the reconstruction would meet Agency standards and city codes and ordinances.

After Appellants' loan was approved, the United States Department of Housing and Urban Development forwarded to said Urban Renewal Agency a sum of money equal to the contract price with instructions to deposit this money into an escrow account for disbursement when the contract was completed to the satisfaction of the owners and the Agency. Thus, on July 26, 1976, Appellants signed the rehabilitation con-

tract and at the same time executed a promissory note in the principal amount of $8500.00 payable to G. M. Rodriguez, the general contractor, as payment for the work to be done under the contract. Appellants also conveyed to Rodriquez a Mechanic's and Materialman's Lien on their home as security for the note. Mr. Rodriguez on the same day assigned the note and lien to the Urban Renewal Agency of the City of Alice, Texas, for the consideration of $8500.00 to be paid upon completion of the contract.

Shortly thereafter, Rodriguez began work under the contract. In order to obtain materials needed for the job and to obtain funds to pay his laborers, Rodriguez contracted with the Defendant-Appellee, Bonded Construction and Supply Co. d/b/a Factory Outlet Building Materials, hereinafter called "Factory Outlet." Appellee agreed to supply Rodriguez with materials and to advance his payroll if Rodriguez would guarantee payment directly from the Urban Renewal Agency to the Appellee. In a letter dated August 10, 1976, Rodriguez informed Urban Renewal of his credit arrangement with Appellee and authorized Urban Renewal to name Appellee as Co-Payee in the amount of $4800.00 on any checks disbursed to Rodriguez. Urban Renewal, in a letter to Appellee Factory Outlet dated August 10, 1976, informed Appellee that disbursement of funds from the escrow account would be by way of checks payable to the "owner, contractor and other designated payees." The letter further stated that, pursuant to Rodriguez's authorization, the Appellee would be named as Co-Payee in the amount of $4800.00 on any checks issued by the agency. On September 23, 1976, Rodriguez increased the amount authorized in payment to Appellee to $8500.00, the full contract price. That same day, Urban Renewal confirmed the increased authorization in a letter to Appellee stating that "when the total job is completed and accepted, we will issue a check in the amount of $8500.00 in the name of your firm, Mr. Rodriguez, and Mrs. Lopez."

Sometime during October or early November of 1976, Mr. Rodriguez abandoned work on the rehabilitation project prior to substantial completion of the work. Because Appellee had not been paid anything, on December 21, 1976, Appellee filed a Mechanic's Lien Affidavit on Appellants' property and sent a copy of the affidavit to Appellants by certified mail, return receipt requested.

Appellants sued Appellee to remove the lien affidavit as a cloud on the title to their property. Appellee filed a crossaction against Appellants to foreclose its asserted statutory mechanic's lien and for a personal judgment against Appellants Lopez and Almaraz for the $5779.00 owing on the Rodriguez account. Trial was to a jury which was only requested to determine the amount of materials and labor supplied by Appellee Factory Outlet for construction of Appellants' home. The jury found that an amount of $4178.92 was due Appellee, whereupon the trial court rendered a personal judgment against Appellants for that amount and also entered judgment ordering the mechanic's lien foreclosed on Appellants' property.

Appellants contend, on appeal, among other things, that Appellee had not perfected a lien on Appellants' property because Appellee failed to comply with statutory requirements of Art. 5453, V.A.T.S. Appellants further assert that the personal judgment was improper in this case because there was no perfected lien and there was no contractual relationship between Appellee and Appellants. We sustain both of these contentions, and thereby reverse and render the trial court's judgment to the end that Appellee Factory Outlet take nothing.

Appellants by their second point of error assert that Appellee Factory Outlet failed to perfect its Mechanic's lien because it failed to furnish to Appellants as property owners the notice required by Section 2b(2) of Article 5453, Vernon's Texas Civil Statutes. We agree. It is undisputed that Appellee Factory Outlet complied with Section 1 of Article 5453 by timely filing the required affidavit claiming its lien in the county clerk's office on December 23, 1976,

and by mailing two copies of such affidavit by certified mail to Appellant Carolina A. Lopez.

However, Section 2 of Article 5453 provides for an additional requirement that must be met by a subcontractor such as Appellee. Such requirement was not met by Appellee Factory Outlet.

Section 2 in its pertinent parts reads:

"If the claimant for such lien is other than an original contractor (as in the case at bar), *such claim shall not be valid or enforceable unless the claimant shall also have complied with the applicable notice requirements hereafter set forth which shall be conditions precedent to the validity of such claims* : (emphasis supplied):

\* \* \* \* \* \*

"b. Excepting instances of retainages for which notices have been given in accordance with the preceding subparagraph (not applicable here), *the claimant shall give the applicable notice or notices described,* as follows:

\* \* \* \* \* \*

"(2) Where the claim consists of a lien claim arising from a debt incurred by the original contractor, no such notice need be given to the contractor but notice to the owner, as prescribed in paragraph 2b(1) of this Article will be sufficient.

"Such notices shall be sent by certified or registered mail, addressed to the owner, and where required by this Article to the original contractor, at their last known business or residence address. A copy of the statement or billing in the usual and customary form shall suffice as a notice under this subparagraph; provided, however, *if such statement or billing is to be effective to authorize an owner to retain funds for the payment of such claim as provided in Article 5463 of this Act, it shall contain or be accompanied by some form of statement to an owner to the effect that if the bill remains unpaid he may be personally liable and his property subjected to a lien unless he withholds payments from the contractor for the payment of such statement or unless the bill is otherwise paid or settled."*

By the clear wording of the statute hereinabove quoted from, the mechanic's lien, if same is to be perfected under Section 2b(2), is created only if the owner fails to withhold funds after he is authorized to do so by receipt of the statutory warning required to be given in writing by the subcontractor under said Section 2b(2). In other words, the wording of the required warning is clearly to the effect that a lien will attach "unless" the owner withholds funds due the original contractor. This language makes the failure by the owner to withhold funds a condition precedent to the creation of the lien. Since the giving of the warning is a condition precedent to the owner's authority to withhold funds, it must be concluded that the giving of the warning is a condition precedent to the creation of the lien. *Trinity Universal Ins. Co. v. Palmer* (San Antonio Tex.Civ.App.1967) 412 S.W.2d 691, NRE; also see *Texas & Northern Railway Co. v. Logwood* (Texarkana Tex.Civ.App. 1966) 401 S.W.2d 886, no writ; 38 Tex. Jur.2d, "Mechanics'. Liens," Section 45, pp. 600 et seq.; 38 Tex.Jur.2d, "Mechanics' Liens," Section 41, pp. 594 et seq.

Article 5453 clearly provides that the notices required to be given therein, including the notice required to be given the owner under Section 2b(2) thereof, must be "written notices," said last-named term being used expressly and by reference or implication several times in said statute. In this connection see *Berry v. McAdams* (1900) 93 Tex. 431, 55 S.W. 1112, quoted from in *Texas & Northern Railway Co. v. Logwood* (Texarkana Tex.Civ.App.1966), 401 S.W.2d 886, no writ, at page 890; also see *Owen v. Griffin* (El Paso Tex.Civ.App.1930), 34 S.W.2d 333, no writ, at page 335.

In the case at bar, Appellee Factory Outlet failed utterly to furnish the notice to Appellant owners required by Section 2b(2) of Article 5453. It is undisputed that Appellee never at any time furnished such notice (statutory warning) to Appellants. Neither did they furnish any such notice (statutory warning) to the Urban Renewal Agency.

Appellee's contention as we understand it, is to the effect that the Urban Renewal Agency was acting as the agent for Appellant owners; and since said Agency had actual knowledge that Appellee Factory Outlet was furnishing materials to Rodriguez and advancing money for Rodriguez's payroll on the job in question, that such knowledge on the part of the Agency was imputed to the Appellant owners, to the end that Article 5453, Section 2b(2) was complied with. This argument is without merit, because there is no evidence in this record that Urban Renewal Agency was, at any time pertinent to this lawsuit, acting as agent for Appellants Lopez and Almaraz. On the contrary, this record clearly shows Urban Renewal Agency to be the assignee of the contractual mechanic's lien; and as lienholder of Appellants' property and custodian of the escrow funds, stood in an arm's length position from Appellants. There is nothing in this record to show that Appellants were in a position to exercise any control over the Urban Renewal Agency, nor did they attempt to do so; neither did they ever expressly or impliedly authorize the Urban Renewal Agency to receive notices of any kind for and in their behalf.

Even if we should say for the purposes of argument that the Urban Renewal Agency was acting as agent of Appellant owners, Appellee Factory Outlet has still failed to furnish the Agency the written statutory warning required by Section 2b(2) of Article 5453. All that Factory Outlet did was request the Agency (through Contractor Rodriguez) to protect it (Factory Outlet) at such time or times as the escrow funds would be paid out, by making Factory Outlet a joint payee along with the owners and the Contractor. This was evidenced by the two letters written by the Agency to Factory Outlet dated respectively August 10, 1976, and September 23, 1976, hereinabove referred to, wherein the Agency agreed to so protect Factory Outlet. These transactions in no way effectuated a compliance with Section 2b(2) of Article 5453.

Since Appellee Factory Outlet has failed to comply with the statutory warning requirements of Section 2b(2) of Article 5453, we hold that Appellee failed to perfect a mechanic's lien on the property belonging to Appellants Lopez and Almaraz.

Appellants by their seventh point of error complain of the trial court's judgment wherein a personal judgment was rendered against Appellant owners in favor of Appellee Factory Outlet for the $4178.92 found by the jury to have been the value of materials and labor furnished by Appellee Factory Outlet. We sustain this contention. It is undisputed that there was no privity of contract, nor any dealings of any kind, directly between Appellant owners and Appellee Factory Outlet. This being so, coupled with Appellee's failure to perfect its lien, causes such personal judgment to be erroneous. It is well settled that where a subcontractor (derivative lien claimant) fails to perfect his mechanic's lien, he is not entitled to a money judgment against the owner, in the absence of privity of contract or other circumstances which would render the owner personally liable. *McConnell v. Frost* (Waco Tex.Civ.App.1932), 45 S.W.2d 777, writ refused; *Langford v. Reeves* (Tyler Tex.Civ.App.1972), 478 S.W.2d 259, NRE; *Herrington v. Luce* (Tyler Tex.Civ.App. 1973), 491 S.W.2d 478, no writ; *Owen v. Griffin* (El Paso Tex.Civ.App.1930), 34 S.W.2d 333, no writ; *Crockett v. Brady* (Austin Tex.Civ.App.1970), 455 S.W.2d 807, no writ.

For the reasons herein stated, we reverse the trial court's judgment and render judgment that Appellee Factory Outlet take nothing.

REVERSED AND RENDERED.

HALL, Justice, concurring.

I disagree with the majority's holding that a derivative claimant like appellee must give the owner the statutory warning set forth in § 2b(2) of Article 5453 in order to have a valid lien. It is my view that the lien is created and fixed by the claimant by complying with the other applicable requirements of § 1 and § 2b(2) of the statute, and that the giving of the statutory

814

warning set forth in the second paragraph of § 2b(2) is only necessary to trap funds in the hands of the owner not yet paid to the original contractor for payment of the derivative claimant's bill. In our case no funds were paid to the original contractor, and there was no need for trapping in order to enforce the lien.

However, it is undisputed in our record that appellee, the derivative claimant, did not give appellant Lopez, the owner, "written notice of the unpaid balance of such claim" as required by § 2b(2). Accordingly, appellee does not have a valid, enforceable lien. For that reason I concur with the majority's decision reversing the judgment in favor of appellee and rendering judgment in favor of appellants.